E. J. MOORE, Respondent, v. THE WESTERN UNION TELEGRAPH COMPANY, Appellant.

**Kansas City Court of Appeals, June 3, 1912.**

TELEGRAPH AND TELEPHONE: Delivery of Messages. The statute, Sec. 3330, R. S. 1909, requiring a telegraph company to use reasonable diligence to transmit and promptly deliver messages does not make the company an insurer of the delivery of messages, or that it must employ extraordinary care and diligence to find the addressees, but that it must act with reasonable care and promptness.

Appeal from Boone Circuit Court.—*Hon. N. D. Thurmond,* Judge.

REVERSED.

*Geo. H. Fearons, N. T. Gentry* and *Fred S. Hudson* for appellant.

(1) This suit is based on Sec. 3330, R. S. 1909, and is a penalty statute. Such statutes are considered by the courts of this state as harsh and must be strictly construed. The statutes shall apply to such cases only as come fully and clearly within the provisions. Nothing must be taken by intendment. Cowan v. Telegraph Co., 149 Mo. App. 407; Edrington v. Telegraph Co., 115 Mo. App. 98; Rixke v. Telegraph Co., 96 Mo. App. 410; Grant v. Telegraph Co., 154 Mo. App. 279. (2) The telegraph company is not an insurer of the delivery of messages filed for transmission, and it was bound to do no more than it was paid to do, i. e., transmit the message to the designated office and then make reasonable effort to deliver it. Reynolds v. Telegraph Co., 81 Mo. App. 227; Telegraph Co. v. Trotter, 55 Ill. App. 659. (3) Where it is shown to be the custom, as in this case, of the hotel clerk to receive and receipt for messages for persons who are guests, reg-

istered at the hotel, a delivery to the clerk of the hotel is a proper delivery. Telegraph Co. v. Cobb, 67 S. W. 87; Telegraph Co. v. Reddinger, 63 S. W. 156; Telegraph Co. v. Reddinger, 65 S. W. 78; Telegraph Co. v. Reddinger, 66 S. W. 485; Telegraph Co. v. Mitchell, 66 Am. St. Rep. 911.

*Harris & Finley* for respondent.

(1) Although a penal statute should be strictly construed, the construction thereof should be reasonable. Dudley v. Telegraph Co., 54 Mo. App. 391; Pike v. Jenkins, 12 N. H. 255; United States v. Winn, Fed. Case No. 16740. (2) A telegraph company is the agent of the sender of a message, and his right to the penalty prescribed for a failure to perform the duty imposed by section 3330, Revised Statutes 1909, cannot be affected by any act of the addressee. Brashears v. Telegraph Co., 45 Mo. App. 433; Thompson v. Telegraph Co., 10 Tex. Civ. App. 120. (3) The duty which a telegraph company owes is to make a delivery to the addressee in person, and is not fulfilled until due diligence has been exercised to place it in his hands. Telegraph Co. v. Whitson, 45 Ala. 426; Glover v. Telegraph Co., 59 S. E. 526; section 3330, supra. (4) What constitutes "due diligence," or "reasonable care," which are practically synonymous, is a question for the trier of the facts. Bradshaw v. Telegraph Co., 150 Mo. App. 720; Hendricks v. Telegraph Company, 126 N. C. 304, 35 S. E. 543. (5) A custom to be good must be general, certain, and notorious; and, to be binding on parties to a transaction, must be directly known to them, or so universal and general in its character that knowledge may well be presumed. Fruit and Cotton Press Co. v. Stanard, 44 Mo. 71; Martin v. Hall, 26 Mo. 386.

JOHNSON, J.—This is an action to recover the penalty prescribed in section 3330, Revised Statutes

1909, for the failure of a telegraph company promptly to transmit and deliver a telegram. A jury was waived and after hearing the evidence the court rendered judgment for plaintiff. Defendant appealed.

Plaintiff delivered a message to defendant telegraph company at one of its offices in St. Louis for transmission to Columbia, Missouri, and paid the charge demanded by defendant's agent. The telegram was addressed to Charles M. Hay, a lawyer residing at Fulton who was temporarily in Columbia attending a session of the circuit court. Mr. Hay frequently visited Columbia on professional business and on such occasions generally stopped at the Athens Hotel, one of the principal hotels for transient guests. At the time in question he had been a guest of the hotel two or three days and had been engaged in the trial of a case in the circuit court. He had left no special instructions at the hotel office relative to mail or telegrams but had received mail there. It was the custom of the management to receive mail and telegrams addressed to guests and if an addressee was not in the hotel at the time and his whereabouts were unknown, to put the letter or telegram in the key box corresponding in number to his room.

The message in controversy was received at defendant's office in Columbia about three o'clock in the afternoon and one of defendant's messengers was sent out to deliver it. He went to the hotel, was informed by the clerk that the addressee was a guest of the hotel and occupied a room but was at the courthouse. The messenger at once went to the courthouse, found the clerk of the circuit court and learned that court was not in session and that Mr. Hay was not in the courtroom. He then returned to the hotel and delivered the message to the clerk who receipted for it and put it in Mr. Hay's key box in the office. Late in the afternoon Mr. Hay came to the hotel office, paid his bill and departed for home. He did not notice the mes-

sage in his box, did not think to inquire for letters or telegrams, and the clerk in charge of the office forgot about the message and did not think of it until the following morning. Then he delivered the contents of the message over the telephone to Mr. Hay at Fulton.

It appears that when the messenger visited the courtroom court had not adjourned for the day but had taken a short recess to enable the attorneys in the case on trial, among them Mr. Hay, to prepare their instructions to the jury. Mr. Hay had gone to the office of the local attorneys who were associated with him and was there at work on the instructions. That office and defendant's office were in the same block. The messenger did not think to ask the clerk whether or not court had adjourned nor did the clerk tell him that it was only a short recess. The messenger testified on cross-examination:

"Q. Did you ask if he would be back that evening? A. I do not know whether I asked or not. We always generally ask them whether or not they will be back.

"By the Court: Do you remember what you asked the clerk at that time? A. I asked the clerk was Mr. Hay stopping there.

"Q. What else did you ask him? A. I don't remember any other words."

The clerk testified: "He (the messenger) came to my office down stairs and told me that he had a message for him and I came up to the courtroom and saw that the court was not in session and Mr. Hay was not in the courtroom and I went back and reported the fact to him. He asked me where he would be likely to find him and I told him the Athens Hotel. . . .

"Q. He came back and the case was argued after supper? A. Yes, sir, before supper and was finished up after supper.

"Q. Did this messenger boy ask you how long it would be before Mr. Hay would be back? A. No, sir.

"Q. Or make any other inquires—after you told him that he could probably be found at the hotel, he asked you no other questions? A. No, sir."

The clerk of the hotel on direct examination testified: "I think he brought it in between three and four, if I am not mistaken; I told him Mr. Hay was not in the office, he was at the courthouse. He said he didn't have time to bring it. I signed for the telegram and put it in Mr. Hay's box."

On cross-examination: "Q. And what did you say to him? A. I told him he was at the courthouse.

"Q. About what time was that in the day? A. I think in the afternoon, between three and four—something like that.

"Q. This hotel where you—you say it was the Athens Hotel in this city? A. Yes, sir.

"Q. It has a public office there? A. Yes, sir.

"Q. In charge of a clerk, at all times? A. Yes, sir.

"Q. Has Mr. Hay been a regular guest at the hotel? A. He has stopped there frequently.

"Q. Do you remember how long he had been there at this particular time? A. No, sir, I do not.

"Q. It had been several days? A. Well, I could not answer that.

"Q. He had a room? A. Yes, sir.

"Q. And this room was supplied with a key? A. Yes, sir.

"Q. That was kept in a regular place for that purpose? A. Yes, sir, a key box.

"Q. Did you ever deliver any mail to Mr. Hay at any time? A. I think I have, but I don't remember that he got any at this time.

"Q. That is the way you do? A. Yes, sir, we put the mail in the key box.

"Q. At the hotel, where you kept the key? A. Yes, sir.

"Q. Now, I will ask you if this key box that you have reference to is used for the purpose of leaving mail and telegrams and things of that sort?   . . . A. It is.

"Q. And that is what you do with it? A. Any mail that comes to one that stops in the house we put it in the key box.

"Q. And telegrams likewise? A. Yes, sir.

"And do you receipt for telegrams for guests that are registered at your hotel? A. Yes, sir, I did do it.

"Q. Well, was that your custom, to do that— how long have you been in the hotel business? A. About fifteen years.

"Q. I will ask you whether or not it has been your custom during those fifteen years? . . . A. It is my custom and I have always done it.

"Q. Here in Columbia? A. Yes, sir.

"Q. During your experience as a hotel man? A. Yes, sir, fifteen years in different hotels here."

The view of the law of the case expressed in the declarations of law given by the court is that it was the duty of defendant to exercise reasonable care and diligence to deliver the telegram into the hand of the addressee and in rendering judgment for plaintiff the court found as a fact that defendant's messenger had been negligent in his attempted performance of this duty. This finding has the force of a verdict of a jury, this being a law case, and if it has substantial support in the evidence we cannot set it aside, though we should believe it is opposed to the weight of the evidence.

The only error claimed by counsel for defendant is that of the court in refusing to declare as a matter of law that defendant had used reasonable care and diligence in the delivery of the telegram. The position of counsel for plaintiff is that the issue of whether or

not such care has been observed is shown by the evidence to be one of fact and not of law. Section 1255, Revised Statutes 1899 provided:

"It shall be the duty of every telegraph . . . company . . . on payment or tender of the usual charge for transmitting dispatches . . . to transmit the same promptly and with impartiality and good faith under a penalty of two hundred dollars for every neglect or refusal so to do," etc.

In Connell v. Telegraph Co., 108 Mo. 459, the Supreme Court construing this statute held in an action to enforce the penalty on account of neglect in the delivery of a message sent from this state to a point in another state that the term "to transmit" did not include delivery to the addressee and that the demurrer to the petition should have been sustained. In 1907 the Legislature amended the statute to read as follows:

"It shall be the duty of every telegraph . . . company . . . to transmit and deliver the same (a dispatch) to designated address and to use due diligence to place said dispatch in the hands of the addressee by the most direct means available . . . promptly and with impartiality and good faith under a penalty of three hundred dollars for every neglect or refusal so to transmit and deliver." [Sec. 3330, R. S. 1909.]

Being highly penal in that it authorizes a recovery by the sender of a telegram of the full penalty without proof that the neglect to deliver caused any actual damage or pecuniary loss to the sender, the statute is to be strictly construed. [Connell v. Telegraph Co., supra; Eddington v. Telegraph Co., 115 Mo. App. l. c. 98; Grant v. Telegraph Co., 154 Mo. App. 279.] But by the expression "strict construction" is meant that the scope of the statute shall not be extended by implication beyond the literal meaning of the terms employed and not that the language of the terms

shall be unreasonably interpreted. Courts should neither enlarge nor narrow the true meaning of penal statutes by construction but should give effect to the plain meaning of words and where they are doubtful, should adopt the sense in harmony with the context and the obvious policy and object of the enactment.

The plain letter of the statute as amended discloses the legislative purpose of requiring a telegraph company to use reasonable diligence not only in the transmission of a paid message over its wires but in the prompt delivery of such message into the hand of the addressee by the most direct means available. This does not mean that the company is an insurer of the delivery of the message or that it must employ extraordinary care and diligence to find the addressee and personally hand him the message but that it must act with reasonable care and promptness, such care as the hypothetical ordinarily careful and prudent man would employ in the performance of a duty emphasized by a penal law. We agree with the view of plaintiff that since the statute bestows the cause of action on the sender of the message and not on the addressee the latter would have no authority to waive the performance of the duty imposed on the company, but we do not sanction the suggestion that either the sender or the company who is his agent has any right to invade the privacy of the addressee against his will and to force into his hands a message he refuses to receive. Nor did the Legislature intend that every telegraph office should carry a detective bureau as an adjunct to ferret out an addressee who could not be found by an ordinary messenger pursuing ordinary methods with reasonable care and diligence. The messenger went to the hotel where the addressee was a guest and had a room; learned that he was a lawyer, a stranger in the city and that likely he was at the courthouse. He went to the courthouse and make inquiries of the clerk of the circuit court. The clerk

says he went to the courtroom, saw that court was not in session and that Mr. Hay had gone and then returned to his office and informed the messenger of these facts and directed him to take the message to the hotel. The clerk knew the messenger had a telegram for Mr. Hay but did not tell him that the court had taken only a short recess and that Mr. Hay would return. What he did say would have caused any reasonable person in the situation of the messenger to believe that court had adjourned and that Mr. Hay would not return.

No doubt an experienced detective would have cross-examined the clerk and elicited information that would have led him to the lawyers' office, but we think plaintiff in asserting that the messenger should not have acted on the information given him by the clerk, is exacting not ordinary but extraordinary care of an ordinary telegraph messenger who, if he possessed experience in affairs and acute faculties of such high order should be in some more lucrative employment. We say that the evidence of plaintiff does not tend to show any neglect of duty on the part of the messenger in returning to the hotel as directed. On finding that the addressee had not returned to the hotel did he not use "the most direct means available" for putting the message into the hands of the addressee? Believing that court had adjourned he had every reason to believe that Mr. Hay would return to his hotel in a short time and that by leaving the message there he would accomplish a delivery more quickly than by going about a city of eight or ten thousand inhabitants making inquiries of the whereabouts of a stranger who had no other known places of resort than the hotel and the courthouse. It does not seem important to discuss whether or not the hotel management was the technical agent of its guests in such matters. The statute required defendant to use the most direct means available and we say as a matter of law that it

did use such means. It is a matter of common knowledge that transient guests of hotels receive mail and telegrams at their hotels. Defendant in good faith could act on that knowledge having available no more direct means of finding the addressee. The failure of the message to come into the hand of Mr. Hay promptly was due partly to his own negligence and partly to the negligence of the hotel clerk who, having received the message, forgot to deliver it at the first opportunity. If Mr. Hay had only looked at his key box when he paid his bill—and it was in plain sight— he would have seen the message. To hold defendant liable in this case would be to make it responsible for the faults of others after it had done what any ordinarily reasonable and prudent person would have done in the same situation.

The judgment is reversed. All concur.