JOHN D. TAYLOR, Respondent, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

Kansas City Court of Appeals, June 1, 1914.

1. **TELEGRAPH COMPANIES: Delay in Transmission and Delivery of Message: Suit for Penalty under the Statute.** The Statute (Sec. 3330, R. S. Mo. 1909) does not make a telegraph company an insurer of the delivery of messages, nor does it require it to employ extraordinary care and diligence to transmit and deliver the same. The statute is highly penal, must be strictly construed and should be applied only to such cases as come clearly within its provisions and manifest spirit and intent.

2. ———: ———: ———: **Reasonable Office Hours.** A telegraph company has the right to fix reasonable office hours for the receipt and delivery of messages and within which its business may be transacted. Such hours may be fixed with reference to the quantity of business done at the office. Whether the hours fixed are reasonable or unreasonable is a question of law for the court. At an office in a town of from 200 to 500 inhabitants doing only $11 or $12 per month with an average of one telegram on Sunday, four o'clock is a reasonable closing hour on Sunday afternoons.

3. ———: ———: ———: ———: **Agent of Receiving Office not bound to Know Office Hours of Destination Office.**

Taylor v. Telegraph Co.

Where a message was received for transmission at an hour in the day not so late as to necessarily show that reasonable office hours of the destination office must have closed, but after they had in fact closed, and no special undertaking was entered into to transmit it regardless of that fact, the company cannot be held liable for delay until the opening of office hours next morning, caused by the fact that office hours had closed and no one was at said destination office to receive the message. The agent of the receiving office is not bound to know the hours of any other office of the company.

4. ——: ——: ——: ——: Storms and Wire Trouble. Nor is the company liable for the delay occurring after the opening of office hours the next morning where such delay was caused by storms and atmospheric conditions interrupting the wire service after said message had been received for transmission.

5. ——: ——: ——: ——: Prima-facie Case: Burden of Proof. A contract for transmission being established, evidence of an unexplained unreasonable delay will make a prima-facie case for plaintiff. But where defendant satisfactorily explains what appears to be an unreasonable delay, the apparent case made by the plaintiff no longer remains. To make out a case then, plaintiff must come forward with proof contradictory of the explanation offered. The burden of making out a case within the statute rests upon plaintiff throughout. Of course, if defendant's explanation contains improbable elements or supports a reasonable inference that the alleged explanation does not explain, then it is a question for the jury to settle because plaintiff's apparent case remains an issue of fact to be passed on by the triers of the fact.

Appeal from Chariton Circuit Court.—*Hon. Fred Lamb,* Judge.

REVERSED.

*Fred S. Hudson* for appellant.

(1) This being a penalty statute, it must receive strict construction and nothing taken by intendment, and plaintiff must bring himself fully within all the provisions of the statute before he can recover. Bradshaw v. Telegraph Co., 150 Mo. App. 711; Eddington v. Telegraph Co., 115 Mo. App. 93; Rixke v. Tele-

181 App. 19

graph Co., 96 Mo. App. 406; Moore v. Telegraph Co., 164 Mo. App. 165; Adcox v. Telegraph Co., 171 Mo. App. 331. (2) The telegraph company has fixed reasonable hours for the receipt and delivery of messages, and the question whether such regulation is reasonable or unreasonable is one of law for the court to declare. Western Union v. Love-Banks Co., 83 S. W. 494; Western Union v. Ford, 92 S. W. 529; Western Union v. May, 27 S. W. 760; Western Union v. Neel, 25 S. W. 15; Western Union v. Van Cleave, 54 S. W. 829; Western Union v. Bibb, 136 Ky. 817. (3) Wire trouble is a valid excuse for not delivering a message promptly, and the company is not by law required to do impossible or unreasonable things on account of storms or other atmospheric conditions. Bierhaus v. Telegraph Co., 34 N. E. 585; Telegraph Co. v. Cohen, 73 Ga. 522; Beasley v. Telegraph Co., 39 Fed. 181. (4) The agent at the sending office is not bound to know the office hours at the receiving office. Jones on Telegraph and Telephone, Sec. 349; Sweet v. Postal Telegraph & Cable Co., 47 Atl. 882; Western Union v. McConnico, 54 S. W. 595.

*John D. Taylor* for respondent.

TRIMBLE, J.—This is an action to enforce the penalty prescribed by Section 3330, R. S. Mo. 1909, for failure to promptly transmit and deliver a telegram. A jury was waived and the case tried by the court. Defendant demurred to the evidence at the close of the case. This was overruled and judgment rendered for the penalty. Defendant appealed.

Plaintiff, desiring to send a message to Sumner, twenty-five miles away, went in company with C. M. Hopper, a merchant of Sumner, to defendant's station in Salisbury at 5:34 p. m. Sunday, August 25, 1912, and delivered to the agent the following telegram:

"Salisbury, Missouri
8-25-1912.
C. W. Northcutt,
    Sumner, Missouri.
    Send proof of publication to Keytesville to-night without fail.
                              JOHN D. TAYLOR."

At the time of so doing, Mr. Taylor inquired of the agent the charges thereon and paid them. He also told the agent that the message was important and to be sure to get it out, to which the agent replied "all right."

The message was not delivered to the addressee until sometime between ten and eleven o'clock Monday morning, the next day.

Sumner, the destination of the telegram, is a town of from 300 to 500 inhabitants, and defendant's business at that point amounts to $11 or $12 per month with an average of one telegram received on Sunday. The telegraph office closed at four o'clock on Sunday afternoons, and did not open again till seven o'clock the next morning.

Defendant's contention is that as the telegram was not received for transmission until more than one hour and a half after the Sumner office had closed, defendant is not liable for the failure to transmit the telegram before seven o'clock Monday morning. And that it is not liable for any delay occurring after that time because, owing to storms and bad atmospheric and weather conditions during Sunday night, the wires were put out of service, and connection could not be made with the Sumner office until after ten o'clock Monday morning and that in a few minutes after the wire trouble was overcome, the message was sent through to Sumner and delivered.

While Sumner is only twenty-five miles from Salisbury, yet telegraphic connection between them is not

direct, that is, there is no telegraph line running from Salisbury direct to Sumner. The message either had to be sent to Kansas City and from there relayed to St. Louis, and thence by way of Jacksonville, Illinois, and Keokuk to Sumner, or, started from Salisbury by way of Moberly to St. Louis and thence relayed as before to Sumner. There was no direct line from Kansas City to Sumner or from St. Louis to Sumner.

Plaintiff proved the delivery and receipt of the telegram at Salisbury for transmission at 5:42 Sunday afternoon, the payment of the charges thereon with notice of the fact that the message was important, and the unreasonable lapse of time before delivery to the addressee. Plaintiff then rested.

Defendant then offered testimony showing that office hours at Sumner closed at four o'clock Sunday afternoons; that Sumner was a small place and that on an average only one telegram per Sunday was received there; that within three minutes after receiving the telegram for transmission the agent at Salisbury sent it to Moberly to be sent to St. Louis and thence relayed to Sumner.

The agent testified that at the time he received the telegram from plaintiff he did not know of any wire trouble, but immediately after sending the message to Moberly, he learned that west of Salisbury, that is, between Salisbury and Kansas City, he learned the wire was "open," i. e., was not working and messages could not be sent over it. Defendant's testimony showed further that it made no difference whether the message started by way of Kansas City or by way of Moberly, as transmission is an instantaneous matter, when connection is obtained, without regard to distance, but that, as the "wire was open west" it was better service to send it to St. Louis by way of Moberly than to do so by way of Kansas City. Defendant's testimony further showed, by records kept

at the time, that the telegram was received at St. Louis at 5:42. As soon as it was received at St. Louis, the operator in charge of that division tried to send it to Sumner over the regular route, but was unable to do so. He kept calling Sumner for some time but was unable to get any response. He realized that Sumner was one of the early closing offices, but at six o'clock attempted to send the message around by way of Centerville, Iowa. At 6:15 he became convinced or learned of wire trouble on the line by which Sumner was reached, and at that hour tried to send the message by Keokuk, Iowa, but, as that office was on the same circuit as Centerville, it could not help him get it through. He then tried other routes but without avail. He tried to telephone it through by way of Brookfield, Laclede and other possible points but was unable to do so. This operator was on duty from 5:30 p. m. that day until 2 a. m. His log book kept at the time was introduced and it showed wire trouble on the route to Sumner, noted first at 6:15, at which time he tried to get the message through by way of Keokuk. The log book further showed notations of storms, lightning, rain and consequent wire trouble at later hours. His records also showed that at 8:05 he called Laclede over the telephone and tried to get the message to Sumner. Laclede informed him that all telephone wires were down on account of a big fire. From 8:10 to 8:30 he was calling Brookfield and finally got Brookfield over the telephone but was advised by Brookfield that the telephone office at Sumner had closed for the night, and that nothing could be done. He thereupon notified the Salisbury office that the message "hung till morning; there was no way to move it." The telegram was then placed "on the wire", that is, put with others to be sent out from St. Louis the next morning.

When morning came and the day man in charge of that division came on duty at seven o'clock, the

wire trouble caused by the Sunday night storms prevented the message being sent. After discovering the condition of the wires the operator called Carrollton and asked that office to help on the message. Between seven o'clock and 9:40 that morning the operator's log book showed fifteen calls made in the attempt to get the message through, but not until 9:40 did the wires get in working order, and at 10:10, thirty minutes later, the message was sent and delivered.

No testimony was introduced to contradict the foregoing, and after defendant's demurrer had been submitted and overruled, judgment was rendered for $300, the penalty provided in the statute.

The basis of the action is a statute which is highly penal and must be strictly construed "and applied only to such cases as come clearly within its provisions and manifest spirit and intent." [Eddington v. Western Union Tel. Co., 115 Mo. App. 93, l. c. 98; Bradshaw v. Telegraph Co., 150 Mo. App. 711; Rixke v. Telegraph Co., 96 Mo. App. 406.] The statute does not make a telegraph company an insurer of the delivery of messages nor does it require it to employ extraordinary care and diligence to transmit and deliver the same. [Moore v. Western Union Tel. Co., 164 Mo. App. 165.]

With this fundamental principle and consideration in mind, are the facts in this case such as to bring it clearly within the provisions and manifest spirit and intent of the statute?

It will be noticed that the message was handed to defendant's agent for transmission on Sunday *after* the Sunday office hours of Sumner had closed; that Sumner was a small place having but little business transacted at that office with an average of only one telegram per Sunday; that four o'clock on Sunday afternoon is not an unreasonable closing hour for an office of that size and volume of business. The company has a right to fix reasonable office hours for the receipt and delivery of messages, and the question

whether the office hours fixed are reasonable or unreasonable is a question of law for the court. [Western Union Telegraph Co. v. Love-Banks Co., 83 S. W. 949; Western Union Tel. Co. v. Ford, 92 S. W. 528.] The company may establish reasonable hours within which its business may be transacted, and such hours may be fixed with reference to the quantity of business done at the office. [Western Union Tel. Co. v. Bibb, 136 Ky. 817, 1. c. 820; Western Union Tel. Co. v. Harding, 103 Ind. 505; Western Union Tel. Co. v. Neil, 25 S. W. 15; Western Union Tel. Co. v. Van Cleave, 54 S. W. 827, l. c. 829.]

The company having the right to fix four o'clock as the Sunday office-closing hour, and the message not having been received until *after* that time, the company ought not to be held liable for the failure to deliver the telegram before seven o'clock the next morning, because the Sumner office was closed from 4 p. m. Sunday to 7 a. m. Monday. The reason no response could be obtained from Sumner by the St. Louis operator calling from 5:42 till 6:15, when the wires ceased working, was because the Sumner office was closed and no one was there.

But plaintiff says that while the company has the right to establish reasonable office hours, yet by accepting, after those hours, messages for transmission, such rules for office hours are waived. That is true where the agent accepting the message for transmission knew, or should have known, that the destination office is closed and yet, notwithstanding that fact, entered into a specific contract for immediate delivery of the message. It is not shown in this case that the agent knew the closing hours of the Sumner office. The hour the agent received it, 5:42 p. m. on August 25, was not so late in the day as to necessarily inform him that the Sumner office was closed. In Bolton v. Western Union Tel. Co., 76 S. Car. 529, cited by plaintiff in support of his position on the point of waiver, the

message was received for transmission at ten o'clock at night, and the agent must have known the destination office hours were over. In that case a special undertaking was entered into to transmit and deliver immediately a message received at a late hour, and although the message was transmitted immediately and received by the night operator at the destination office, yet no effort was made to deliver the telegram till next morning. In the case at bar, there was no special undertaking to send and deliver the message out of office hours. The contract made was no more than to send the message according to the ordinary rules and regulations of the company. The agent at Salisbury, the sending office, was not bound to know that the office at Sumner closed at four o'clock Sundays. [Sweet v. Postal Telegraph & Cable Co., 47 Atlantic 881; 27 Am. & Eng. Ency. of Law, 1038; Western Union v. McConnico, 66 S. W. 592.]

On this point Jones on Telegraph and Telephone Companies, Sec. 349, says: "It is not the duty of the operators at any receiving office to know the hours of any other office of the company. The immense number of these offices all over the United States, the frequent changes among them, and the time of closing seems to make this onerous and inconvenient to a degree which forbids it to be treated as a duty to its customers for neglect, and for which it should be held liable in damages. Furthermore, there is no more obligation to do this in regard to offices in the same state than in those four thousand miles away; since the communication is between them all and of equal importance." [See also Given v. Telegraph Co., 24 Fed. 119; Western Union Tel. Co. v. Neel, 86 Tex. 368; Western Union Tel. Co. v. Harding, 103 Ind. 505.] It may be contended that even if the sending agent is not bound to know that the Sumner office closed at four o'clock, yet he should know that reasonable office hours were established, and consequently, he should

have ascertained whether Sumner had closed and informed the sender of that fact, before accepting the message. But, by the weight of authority, the sender is as well aware of that fact as the agent. [27 Am. & Eng. Ency. of Law (2 Ed.), 1039.] Besides, plaintiff's companion, Mr. Hopper, in business at Sumner, told him the telephone office would like be closed at Sumner, but said nothing about the telegraph office. This was sufficient to have warned him that the telegraph office also would likely be closed. If the sender wanted to send the message without regard to the likelihood of its being closed, he should have had a specific contract to that effect. There was none in this case. Merely because the company tried to deliver at once, although after office hours of the receiving station, does not render the company liable. [Western Union Tel. Co. v. Rawls, 62 S. W. 136.]

Was the company liable for the delay after the Sumner office opened the next morning? It opened at seven o'clock and the message was not delivered until 10:10 a. m., three hours and ten minutes later. But the storm and atmospheric conditions during the preceding night had put the wires out of service. From seven a. m. until 9:40 fifteen different attempts were made to send the message. At 9:40 the wires were gotten into working order and at 10:10 the message was sent and delivered. Storms and atmospheric conditions rendering it impossible to transmit the message absolve the company from liability. The statute does not require it to do impossible or unreasonable things. [Western Union Tel. Co. v. Cohen, 73 Ga. 522; Bierhans v. Western Union Tel. Co., 34 N. E. l. c. 585; Beasley v. Telegraph Co., 39 Fed. 181; Fowler v. Telegraph Co., 15 Atlantic Rep. 29.]

It is said that the agent receiving the message for transmission should have informed the sender of the wire trouble pursuant to Sec. 3332, R. S. Mo. 1909. But the wire trouble was not known and did not arise until

after the message was received and had been attempted to be sent. The wire trouble west of Salisbury had no part in preventing the transmission of the message, but even if it had, it did not manifest itself until after the message had been received and started on its way to St. Louis by way of Moberly. The wire trouble interfering with the transmission of the message arose at 6:15. Plaintiff contends that the message should have been sent from Salisbury to Carrollton and from thence to Sumner. But Carrollton was not a relay office, and messages are not sent by way of Carrollton unless connection is interrupted on the regular route. The Carrollton office closes at six o'clock on Sundays, however, so that when the interruption to the wires was discovered at 6:15, no one was at Carrollton to transmit it. Besides, the Sumner office was also closed. So that neither before seven o'clock Monday morning nor after that hour was there any culpable delay shown in the transmission of the message for which the penalty called for in the statute should be inflicted.

Point is made that since the plaintiff proved the presentation and acceptance of the telegram for transmission and delivery, the payment of the charges therefor, and delay beyond reason, a prima-facie case was made, and that since it devolved on the defendant to show that it was not to blame for the delay, and the truth of its defense is for the court sitting as a jury to pass upon, and since the court sitting as a jury has found against defendant, the appellate court cannot disturb that finding, since that would, in effect, be saying that the trier of the fact must accept as true the testimony of defendant. Plaintiff's point is that even though he offered no testimony to contradict the defense, nevertheless, the credibility of defendant's evidence is for the jury, or the court sitting in the place of the jury, and hence the judgment must be permitted to stand. There is a rule of this kind in other kinds of cases; but it does not apply in cases

of this character where there must be such facts shown as will bring the case clearly within the operation of the statute. A contract for transmission being established, unreasonable delay *unexplained* will make out a case for plaintiff. The burden of making out a case within the statute rests throughout upon the plaintiff. He has done this when he has shown a contract for transmission and an unreasonable delay that is not explained or lawfully accounted for. But when defendant satisfactorily explains what appears to be an unreasonable delay, the *apparent* case made by plaintiff is no longer a case, since it appears that the delay was not culpable. To make out a case then, it is incumbent upon plaintiff to come forward with proof contradictory of the explanation offered. If he does not do so, then he has not presented a case of unexplained delay. As said by BLAND, P. J., of the St. Louis Court of Appeals, in Taylor v. Western Union Tel. Co., 107 Mo. App. 1. c. 108, "the statute on which the action is grounded is penal, and a case to be brought within its provisions should be clearly made out by the evidence. Plaintiff made a prima-facie case by showing an unusual delay in the transmission of the message, but only a prima-facie case. We think this was *clearly and completely overturned by the uncontradicted testimony offered by defendant,* some of which was documentary, that the delay was caused by a storm of sleet and wind, which disabled its wires, and the defendant can not be held responsible for the wind and sleet storm." (Italics ours.) . There is a distinction between burden of proof in the sense of making out a case and burden of proof in the sense of the duty of going forward with evidence. The latter is frequently called burden of proof the same as the former. But there is a distinction between the two. The burden of proof in the former sense never shifts, but remains with the plaintiff throughout. Burden of proof in the latter sense does shift from side to side according to the

state of the evidence. That is, the duty of going forward with proof shifts from one side to the other, but not the burden of making out a case. [Marshall Livery Co. v. McKelvy, 55 Mo. App. l. c. 242.] Now in a suit for the penalty for failure to transmit and deliver a telegram promptly, the burden of making out a case is not maintained when the facts, as explained, do not show a culpable delay. It is not like a case where plaintiff's cause of action established, prima facie, by certain facts *still remains* after defendant has introduced evidence of an affirmative defense, and an *issue of fact* is created between the two parties. There the rule contended for by plaintiff applies; but, in a suit of the kind at bar, the *facts* making out plaintiff's *apparent* case are *not contradicted* by defendant's evidence. The only effect of defendant's evidence is to show that plaintiff's *apparent* case is not a case at all. Plaintiff, in that event, has not presented a case of unexplained delay, but merely one that has been explained. If there was an *issue of fact* between the two sides as to which side were true, then that issue of fact would be for the triers of fact to determine. But merely by establishing the contract for transmission and the delay, plaintiff in no way contradicts the *facts* presented by defendant. Neither contradicts the other on the facts. Plaintiff's prima-facie case rested upon a presumption of fact which supplied the absence of affirmative proof on one point—whether the delay was negligent—but when affirmative evidence on that point appeared, the presumption of fact, being no more than a presumption, took flight and disappeared. And with it went plaintiff's prima-facie case. [Sowders v. Railroad, 127 Mo. App. 119, l. c. 124.] A presumption of fact will not be permitted to contradict or overcome facts actually proved. [Whittaker v. Morrison, 44 Am. Dec. 627; Morton v. Heidorn, 135 Mo. 608, l. c. 617.] Presumptions disappear in the sunshine of facts. [Mockowik v. Railroad, 196 Mo.

550, l. c. 571; Bragg v. Met. St. Ry. Co., 192 Mo. 331, l. c. 354.] There is, therefore, an entire absence of evidence showing a *culpable* delay and an absence of an issue of fact on that question. In such case, as the burden is on plaintiff to maintain his case by showing a culpable delay, and that kind of delay has not been shown, nor an issue of fact regarding it, plaintiff has failed in his case.

Of course, if defendant's explanation of the delay contains improbable elements or carries with it facts which support reasonable inferences that the alleged explanation does not explain, then plaintiff's *apparent* case remains since it has *not* been explained. But there is nothing of this kind in this case. Nearly every act of defendant in reference to attempts at transmitting the telegram was corroborated by documentary evidence of notations made at the time, as was also the fact that the wires were interrupted by weather conditions and storms. It would have been an easy matter to prove that these weather conditions were not true if such were the fact. Unless there was evidence in the case showing, or from which it could be clearly inferred, that defendant, after receiving the message and payment for its transmission, failed to use due diligence to transmit and deliver the same promptly and in good faith, the penalty should not be inflicted. [Taylor v. Telegraph Co., 107 Mo. App. l. c. 108; Moore v. Western Union Tel. Co., 164 Mo. App. 165.]

There being no such evidence in the case, the judgment is reversed. *Ellison, P. J.* and *Johnson, J.,* concur.