## W. L. RUBEOTTOM, Respondent, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

Springfield Court of Appeals, June 26, 1916.

1. TELEGRAPHS AND TELEPHONES: Duties to Transmit and Deliver Prepaid Messages: Statute. It is the duty of telegraph companies, on payment or tender of payment of their usual charges for transmitting and delivering messages, to transmit and deliver same to the designated address and to use due diligence to place such message in the hands of the addressee by the most direct means available, promptly. [Sec. 3330, R. S. 1909.]

2. ———: ———: ———: Not an Insurer. A telegraph company is not, by the statute, made an insurer of the delivery of messages nor does the statute require the company to employ extraordinary care and diligence to transmit and deliver same.

Rubeottom v. Western Union Tel. Co.

3. ———: ———: Company Not Liable When: Facts. Plaintiff who was in Saint Louis temporarily, without leaving directions where he might be found in the city, paid the usual fee for the transmission of a telegram which he left with the company's agent, addressed to a party in another part of the State. The addressee was in fact at the time fifteen miles from the place where he was addressed and could not be reached by telephone and his mail was not delivered for four days. The company sent a special messenger the day after the telegram was received at its destination, after failing to locate the sender, the cost being $2. The sender is not entitled to recover the statutory penalty for negligent delay in delivering the message under Sec. 3330, R. S. 1909.

4. ———: ———: Prima Facie Case: When Will Not Support Verdict. A plaintiff's prima-facie or apparent case against a telegraph company for negligent delay in delivering a message (Sec. 3330, R. S. 1909) will not support a verdict where the uncontroverted facts brought forward by defendant negative that presumption.

5. ———: ———: Delivery of Messages: Construction of Statute. Sec. 3330, R. S. 1909, only requires the telegraph company to deliver a telegram at the designated address to the addressee or his agent.

6. ———: ———: ———: Statutory Penalty Not Recoverable, When. The addressee of a telegram was at work fifteen miles from the address given. He could not be reached by telephone. A letter notifying him of the telegram would have required four days to be delivered. The company, the day after receiving the message, sent it by special messenger to the place where the addressee was and the message in fact reached him at least two before it would have reached him by mail. The company cannot be *held* liable under these facts for a penalty under Sec. 3330, R. S. 1909, because it did not send the message by mail.

7. ———: ———: ———: Delivery to an Acquaintance. The addressee of a telegram was working fifteen miles away from the place where he was addressed. There was no telephone service to that place and the only way to reach him was by special messenger. An acquaintance of the addressee volunteered to deliver the message. The company cannot be *held* liable for failure or refusal to give the message to such acquaintance. Because if he had opened and read it the defendant would have been guilty of disclosing the contents of a private dispatch under Sec. 3334, R. S. 1909.

Appeal from Scott County Circuit Court.—*Hon. Frank Kelly,* Judge.

REVERSED.

*A. T. Benedict* and *Wammack & Welborn* for appellant.

*M. G. Gresham* and *Harry C. Blanton* for respondent.

FARRINGTON, J.—This is an action for the three hundred dollar penalty prescribed by section 3330, Revised Statutes 1909, in which plaintiff prevailed and defendant has appealed.

The statute provides that it shall be the duty of telegraph companies, on payment or tender of their usual charges for transmitting and delivering messages as established by their rules and regulations, to transmit and deliver the same to the designated address and to use due diligence to place the message in the hands of the addressee, by the most direct means available, promptly.

Plaintiff claims that a negligent delay occurred in placing a message sent by him from St. Louis, Mo., in the hands of the addressee by the most direct means available, promptly.

Defendant's answer was a general denial.

The facts are as follows: Plaintiff, a resident of Greenville, Mo. was in St. Louis temporarily and on Wednesday June 28, 1915, at about 11:00 o'clock a. m. addressed and delivered a telegram to one of defendant's agents in St. Louis, paying about forty cents or all that was demanded as the service charge by defendant for delivering the telegram to "J. B. Edwards, Sikeston, Mo." He was not asked for any additional sum to insure the delivery of the message. He thought the addressee was in Sikeston. He did not tell the defendant's agent where he could be found in St. Louis nor did the agent ask. So far as he knew defendant's agent had no way of knowing where he lived or where he could be found in St. Louis. He was not registered at any hotel, being with a friend who was staying at the Annex Hotel. He remained in St. Louis that day,

departing at nine o'clock the next morning, and he did not return to the telegraph office to ascertain anything further concerning the telegram. It is admitted that all the defendant knew was what the face of the message disclosed. It is as follows:

"St. Louis, Mo. 1139A July 28, 15. .

"J. B. Edwards, Sikeston, Mo.

"Oscar was killed yesterday. Burial at Greenville tomorrow afternoon.

"W. L. RUBEOTTOM."

It is not claimed that there was any negligent delay in transmitting the message from the St. Louis office to the Sikeston office.

It is undisputed that the messenger boy at Sikeston went to the postoffice and ascertained that Edwards worked for a man named Matthews, and that he would not get his mail until the following Saturday. This was on Wednesday, shortly after noon. The messenger boy then ascertained from Jule East, who worked at Matthews' office in Sikeston, that Edwards was working some fifteen miles in the country.

The facts fail to disclose that there was any telephone line over which Edwards could be reached, defendant's evidence being that Edwards could not be reached by telephone; nor is it shown that there was any rural delivery of mail by which he could reached. Indeed, the evidence shows that the only means of communicating with Edwards was by private messenger. It was shown that there was a liveryman in Sikeston who could and would have taken the telegram to Edwards on Wednesday afternoon, the day it reached Sikeston, at a charge of two dollars, and that this would have placed the information contained in the telegram in Edwards' hands late on Wednesday. The Sikeston office wired the St. Louis office inquiring whether the sender would guarantee the charge for making this special delivery by private messenger. This, however, proved futile because the sender, though in St. Louis, was unknown to any of defendant's agents, and as before stated left no address where he could be found and did not inquire at the St. Louis office after

turning the message over for transmission. Other telegrams passed between the two offices which are unimportant. On the next morning (Thursday) the agent who worked at the counter in the St. Louis office and who dealt with the plaintiff on his own responsibility wired the Sikeston office to deliver the message and that he would stand good for the charge. Accordingly, the telegram was turned over to the liveryman and it was placed in Edwards' hands about three o'clock in the afternoon, too late for him to attend the funeral of his brother-in-law at Greenville. Edwards paid the liveryman's charge so that neither the defendant nor the agent in St. Louis had to pay it.

It is admitted that the telegram was not mailed to Edwards at any time. Defendant's evidence is to the effect that a notice that a telegram was at the Sikeston telegraph office was put in the postoffice at Sikeston addressed to Edwards there. Edwards however testified that his mail was delivered by carrier at his niece's residence in Sikeston and that he never received the notice defendant claims to have mailed.

With the exception as to the dispute about mailing the notice, the above facts are uncontroverted.

At the close of the evidence, with these facts disclosed, defendant requested an instruction in the nature of a demurrer to the evidence which the court refused to give.

We are clearly of the opinion that the trial court erred in refusing to give this peremptory instruction because there was no case made under the section upon which this suit is based warranting a recovery by the plaintiff.

"The statute does not make a telegraph company an insurer of the delivery of messages nor does it require it to employ extraordinary care and diligence to transmit and deliver the same." [Taylor v. Western Union Tel. Co., 181 Mo. App. 288, 294, 168 S. W. 895; Moore v. Western Union Tel. Co., 164 Mo. App. 165, 148 S. W. 157.]

The plaintiff did not request the telegraph company to have the message delivered by a liveryman and did

not pay the expense of such delivery, and, as the facts show, had no other thought than that Edwards was in Sikeston when he sent the telegram.

It was held in Keeting v. Western Union Tel. Co., 167 Mo. App. l. c. 604, 152 S. W. 95, that the telegraph company was not bound to pay a toll of ten cents to get a message to the addressee by telephone at a place two miles from the receiving station.

In the case of Held v. Western Union Tel. Co. (Mo. App.), 178 S. W. 221, where the telegram was mailed to the addressee on a rural route, it was left to the jury to say whether the company exercised due dili-- gence to place the dispatch in the hands of the ad- dressee by the most direct means available, promptly, as required by the statute; but the question of fact in that case was whether the telegraph company, after ascertaining that the addressee lived in the country, used due diligence in mailing it. The testimony showed that the telegram was received in Dexter on the after- noon of the fifth day of December, and defendant claimed to have mailed the telegram to the addressee on that day. The plaintiff's evidence, however, was to the effect that the telgram, if mailed on the after- noon of the fifth, would have been received by the ad- dressee on the sixth whereas it was not received until the seventh. It therefore became a question of fact whether defendant used due diligence. It was not con- tended there, although the addressee was much closer to Dexter than Edwards was to Sikeston, that there was a duty on the telegraph company to engage a special messenger to send it out to the addressee, and the hold- ing of the opinion clearly indicates that if the jury on re-trial should find that the telegram was mailed on the fifth by the telegraph company and should in ordinary course have reached the addressee on the sixth, the finding should be for the defendant.

It is held by a number of cases in this State, a very recent one being that of Taylor v. Western Union Tel. Co., 181 Mo. App. 288, 168 S. W. 895, that the basis of this character of action is a statute which is highly penal and which must be strictly construed. It is also

held in the Taylor case that although the plaintiff in such cases makes out a prima-facie case by showing the presentation and acceptance of a telegram for transmission and delivery, the payment or tender of payment of the usual charges therefor, and an unreasonable delay in transmission or delivery, such showing fails to warrant a verdict for the plaintiff where the defendant establishes a defense; in other words, the plaintiff's prima-facie or apparent case will not support a verdict (on a presumption of negligence) where the uncontroverted facts brought forward by the defendant explode that presumption.

Here, the telegram was addressed to Edwards at Sikeston. Neither the defendant nor the plaintiff had any idea that he would not be in Sikeston. The statute fixing the penalty requires the telegraph company to transmit and deliver the message to the designated address and to use due diligence to place the same in the hands of the addressee. This could only mean in the hands of the addressee or some agent of the addressee at the designated address.

It is held in many cases that the money must be actually paid or tendered to the defendant in order to permit a recovery under this statute. In this case, the money was not paid to the defendant to deliver the telegram in any other place than Sikeston, and all of plaintiff's testimony shows that that was an impossibility because Edwards was from nine to fifteen miles away from Sikeston.

In this connection, we are not to be understood as holding, because such a case is not before us, that the sender of a telegram can hold a telegraph company under this penal statute for failing to deliver a tele gram to one who is ten or fifteen miles from the nearest office of the company even though the money for such service were tendered or paid to the company at the time of sending the telegram, because the sender would thereby, under the fear of the penalty, require the telegraph company to engage in other lines of business in order that it deliver messages beyond its regu- lar sending and receiving stations.

We come now to the question of whether the telegraph company used the most direct means available to place the dispatch in the hands of the addressee, promptly. .

It is true, if from plaintiff's evidence can be drawn the inference that the telegram or notice was never mailed to Edwards, that the company failed to use the United States mail in advising the addressee of the contents of the telegram; but the facts are undisputed that had the company used the mail for this purpose Edwards would not have had the information imparted to him until the Saturday following the Wednesday on which the telegram was received at Sikeston. A failure to mail the telegram might have been a violation of the duty enjoined by the statute; but it appears by the uncontradicted testimony of plaintiff's witnesses that defendant did actually engage a special messenger and deliver the telegram to Edwards two days before he would have received it by mail. Under these circumstances no one could consistently say that the company should be held for the penalty because it failed to use the mail.

The court refused to permit plaintiff to introduce evidence to the effect that Jule East, who worked for the same man Edwards was working for, told the messenger boy who came to ascertain the whereabouts of Edwards that he would deliver the message to Edwards if the company couldn't. The court properly excluded such testimony. If defendant had delivered the message to East, admittedly a mere volunteer, it might have subjected itself to the penalty prescribed by section 3334, Revised Statutes 1909, East in no wise being an agent of the sender or the addressee, so that if defendant had placed the message in his hands and he had opened and read it the defendant would have been guilty of disclosing the contents of a private dispatch. It is said in Jones on Telegraph and Telephone Companies, section 297, that the defendant company will not be liable for refusing to give the message to a neighbor of the addressee who offers to deliver it with-

194 M. A.—16

out charge, where the addressee lives in the country, deducing the rule from Western Union Telegraph Co. v. Swearinger, 95 Tex. 420, 67 S. W. 767, wherein it was uncontroverted that the person offering to take the telegram was reliable and would faithfully discharge his voluntary obligation to the addressee who lived six or seven miles in the country.

The facts falling short of making a case against the defendant as provided in section 3330, the judgment is reversed. *Robertson, P. J.,* and *Sturgis, J.,* concur.