JOHN H. DAVIS, et al., Defendants in Error, v. WESTERN UNION TELEGRAPH COMPANY, Plaintiff in Error.

Kansas City Court of Appeals, April 1, 1918.

1. **PLEADING: Petition: Cause of Action: Reply.** The petition is the place where one's cause of action must be found pleaded; and one cannot declare upon one cause of action in a petition and recover upon a distinct cause of action in a reply.

2. ———: ———: Telegraph Company: Estoppel Pleaded in Reply. Where a plaintiff instituted an action against a telegraph company for a penalty under section 3330, R. S. 1909, for failure to promptly transmit and deliver a message, and the company by its answer makes the defense that its wires were down by reason of storms and floods; the plaintiff, in reply, may plead estoppel in that defendant did not inform plaintiff of that fact when he delivered the message to its agent, as required by section 3332 of the statute.

3. **INTERSTATE COMMERCE: Sending and Receiving Points in One State.** Notwithstanding both the sending and receiving points for a telegram are in one State, yet if its route of transmission is partly through another State, it is interstate commerce.

4. ———: State Police Power: Regulation of Telegraph Company. Prior to June 18, 1910, when Congress asserted its authority over telegraph companies by placing them under the provisions of the interstate commerce statute, the States, in the exercise of their police power, could enforce penalties against such companies for negligent service. But since the enactment of that federal statute, the States have no such power, Congress having taken possession of the entire ground of regulation.

Appeal from Adair Circuit Court.—*Hon. C. D. Stewart,* Judge.

REVERSED.

*New, Miller, Carnack & Winger, Albert T. Benedict* and *D. J. McCulloch,* for plaintiff in error.

*Weatherby & Frank* for defendants in error.

ELLISON, P. J.—Between two and three o'clock p. m. July 13, 1915, plaintiffs delivered to defendant's agent at Kirksville, Adair county, Missouri, a telegraphic message to be sent to one A. Hulse at Yarrow, a small town in same county and State. They paid the charges and the agent accepted the message. It was not delivered to Hulse until near four o'clock of the next evening. Thereafter, plaintiffs began this action for the penalty of three hundred dollars provided in section 3330 Revised Statutes 1909. The case was tried by the court without the aid of a jury. No declarations of law were asked by either party, save a peremptory direction that the court find for defendant which was refused. The judgment was for plaintiffs.

It is alleged in plaintiffs' petition that upon the defendant's agent receiving and accepting the message "it became and was the duty of defendant, through its said agent, to promptly, with impartiality and good faith to transmit and deliver said message to the designated address and to use due diligence to place said message in the hands of the addressee by the most direct means available without material alterations, under a penalty of $300 for neglect or refusal so to do." It is then alleged that defendant failed to so deliver the message, "wherefore plaintiffs say that by reason of the facts alleged defendant has forfeited the sum of $300. . . , and that by reason of the facts alleged plaintiffs are entitled to recover of the defendant the sum of $300," for which they pray judgment.

Defendant's answer was a general denial, together with allegations that an unprecedented storm had thrown

down its wires and prevented a prompt transmittal and delivery and that such impairment of its service was the sole cause of the delay. It was then pleaded that the most direct means, and only available route, for a message from Kirksville to Yarrow, was around through the State of Iowa, by which it was transmitted, and that it thereby became an interstate message, under interstate commerce law, not subject to regulation and imposition of penalties by the statute of Missouri.

Plaintiffs made reply to this answer, in which, after denying new matter, there was a plea of estoppel based on the failure of defendant's agent to inform plaintiffs that the wires were down, as is required by section 3332.

We have gone over the entire evidence and find the following to be the facts established without contradiction: That plaintiffs at some time between two and three o'clock p. m. of July 13, 1915, delivered the telegram in controversy to defendant's agent at Kirksville to be transmitted to Hulse at Yarrow and that it was not delivered to him until about four o'clock p. m. next day. And that from the time plaintiffs delivered the message in Kirksville (or earlier) until the afternoon of the next day, defendant's communication with Yarrow was cut off by storms, or floods, having put the wires out of service.

The evidence further showed, without contradiction, that on account of the wires being out of service between Kirksville and Yarrow by the usual and natural route, viz., by way of Novinger or Milan, Missouri, defendant routed it through Des Moines, Iowa. On this basis defendant made claim that the telegram came under the control of the interstate law and that the penalty authorized by the Missouri statute for delay in transmitting or delivering could not be recovered.

On account of defendant having thus shown that it was prevented from transmitting and delivering promptly by reason of the wires being down, plaintiffs have endeavored to show defendant to be estopped from such defense by the claim that the agent did not inform

plaintiffs when the message was delivered that the wires were down as required by section 3332, imposing a like penalty of three hundred dollars for failure to give such information to persons sending telegrams. On this question of fact, while defendant undertook to prove that its agent did inform plaintiffs of the condition of the wire, yet there was evidence in plaintiffs' behalf tending to show that no such information was given and, since the finding in plaintiffs' favor, we must assume the fact to be as claimed by plaintiffs.

With this concession of fact comes the question whether, under the pleadings as applied to the statute, plaintiffs have made a case. Two sections of the statute are involved, viz., 3330 and 3332. The first of these declares that if a sender of a telegram desposits it with the company's agent with a payment of charges, it becomes the duty of such company to use due diligence to transmit and deliver to the addressee by the most direct means available "promptly and with impartiality and good faith, under a penalty of three hundred dollars for every neglect or refusal so to transmit and deliver." It will be seen that the petition follows the lines of this section and is undoubtedly bottomed thereon.

The second section (3332) provides, as already stated, that if the defendant's line is out of order when a message is delivered to it for transmission and delivery it is the duty of the agent "plainly to inform" him of that fact; "and for omitting so to do, . . . ; the company by which he is employed shall incur a like penalty as in section 3330." As intimated above, plaintiffs' petition was confined exclusively to matters constituting a cause of action under section 3330, no mention being made of anything required by section 3332. But when defendant, by its answer, pleaded as defensive matter, that storms and floods had put its wires out of service, plaintiffs then, in their reply, pleaded that defendant's agent did not inform them of that fact as it was his duty to do under section 3332, but, on the con-

trary, accepted. the message for prompt transmission and delivery without notifying or advising plaintiffs of any condition of the wires which would prevent such prompt service, and in consequence "plaintiffs relied upon defendant's duty and implied promise to promptly and impartially transmit and deliver said telegram, and plaintiffs allege that by reason thereof defendant is now estopped to claim and set up as a defense herein any impaired condition of their wires and appliances."

Defendant has treated this reply as setting up a new cause of action based on section 3332, and as being, practically, and abandonment of the cause alleged in the petition. If that is a correct interpretation of the reply, defendant is undoubtedly right, for the petition is the place where the cause of action must be found pleaded. One cannot declare upon one cause of action in a petition and recover upon a distinct cause set up in a reply. [Moss v. Fitch, 212 Mo. 484, 502-504; Hill v. Mining Co., 119 Mo. 9, 30; Mohney v. Reed, 40 Mo. App. 99; Ham v. Railroad, 149 Mo. App. 200, 209.]

But we do not consider that plaintiffs stated a new cause of action in the reply. It is true that they there, for the first time, set out the provisions of section 3332; but notwithstanding certain expressions in their reply brief, this was not for the purpose of stating a cause of action based on that section. . It was merely for the purpose -of showing the duty laid upon defendant's agent to inform plaintiffs when they delivered the message for transmission, that the wires were out of service. After setting out the statute imposing this duty and alleging that the agent accepted the message and price for transmission, yet failed to inform plaintiffs that it could not be sent, they alleged defendant was estopped from invoking the defense of the wires being down and out of service. As a plea of estoppel it found its proper place in the reply, for the fact that the wires were out of service first made its appearance in the case through defendant's answer. And, if the facts be as charged in the reply, defendant should be estopped by such conduct. Telegraphic communication means quick and

prompt service unless there be some cause preventing it: If there is, it is the duty of defendant, under the provisions of section 3332, to make it known and this duty may be made the ground for estoppel in an action. for delay under section 3330.

Notwithstanding there might be estoppel, if the action is to be governed by these sections of the State statute, we have seen that defendant claims the message to be interstate commerce and governed by the federal statute and federal decisions interpreting such statute, and that it is therefore not amenable to the State law. There is no doubt that defendant's claim is right. Although both the sending and receiving points were in Missouri, the fact that a part of the route of transmission was through Iowa characterizes the message as interstate. The route must be entirely domestic to keep it from the cover of the federal statute. [Hanley v. Kansas City Southern Ry. Co., 187 U. S. 617; Bateman v. Western Union Telegraph Co., 93 S. E. (N. C. 1917) 467, Western Union Telegraph Co. v. Kaufman, 162 Pac. (Okla. 1917) 708; Western Union Telegraph Co. v. Bolling, 91 S. E. (Va. 1917) 154.]

It is suggested that though the message may have been interstate commerce, yet the State has a right as a part of its police power of regulation, to impose penalties for violation of such regulations as do not necessarily pertain to the service of the company in transmitting and delivering the message. When Congress has not asserted its authority, there are doubtless powers of regulation of interstate commerce which a State may exercise under its police powers when such regulations do not hinder or embarrass commerce (Western Union Telegraph Co. v. James, 162 U. S. 650); and a State statute imposing a penalty for failure to diligently transmit and deliver a telegram is not a hinderance but rather a stimulant to such commerce. [Ib 658, 660.] But it is stated in that case (p. 660) that this is only true "until Congress speaks upon the subject," and that qualification is made in all decisions upholding State regulations of such character. [The

Minnesota Rate Cases, 230 U. S. 352, 402, 405, 408, 409; Southern Ry. Co. v. Reid, 222 U. S. 424, 436.]

Since the decision in the James and similar cases, Congress has spoken in the Act June 18, 1910, ch. 309, sec. 7, 36 State 544. U. S. Comp. St. 1913, sec. 8563, in which it placed telegraph companies under the legislation as to interstate commerce. By that enactment it has been held, wherever the question has arisen, that Congress took possession of the entire ground of interstate commerce by telegraph, thereby superseding all penal State statutes of the kind upon which this action is founded. [Adams Express Co. v. Croninger, 226 U. S. 491; Western Union Tel. Co. v. Bilisoly, 116 Va. 562; W. U. Tel. Co. v. National Bank of Berryville, 116 Va. 1009; Western Union Tel. Co. v. Bolling, 91 S. E. (Va. 1917) 154; Norris v. Western Union Tel. Co., 93 S. E. (N. C. 1917) 465; Western Union Tel. Co. v. Lee, 174 Ky. 210.]

We were in error in deciding Hewitt v. Telegraph Co., 172 Mo. App. 272, by reason of our failing to note that the decisions we relied upon were made under the law as it was before June 18, 1910, when Congress placed telegraph companies under federal regulation.

The judgment will be reversed. All concur.