STATE OF MISSOURI, Respondent, v. CHICAGO, MILWAUKEE & ST. PAUL RAILROAD, Appellant.

Kansas City Court of Appeals, October 26, 1918.

1. **INTERSTATE COMMERCE: Quarantine of Live Stock: Common Carriers.** The matter of quarantine of live stock and regulating their transportation between the states is interstate commerce and when acted upon by Congress so as to impose its own rules and regulations, state quarantine regulations are superseded; and a conviction of a transportation company for violating a State statute is without legal support.

2. ———: **State Law: Congressional Action.** Where the state law does not unduly hinder or embarrass interstate commerce it may lawfully prescribe regulations incidentally affecting such commerce, until Congress speaks on the same subject, in which event the state law is superseded.

3. ———: **Federal Statute: Limited Regulation: Later Statute.** The federal statute (23 U. S. Stat. 31) was but a partial and limited regulation of quarantine of live stock. The act of March 3, 1905, (33 U. S. Stat., p. 1264, Chap. 1496), is much more comprehensive. It deals in detail, with the same subject and phases of quaran-

tine that the Missouri Statute does (Sec. 717, R. S. 1909) and it is held to supersede the latter statute.

4. ———: Federal and State Statute: Conflict. Where the federal Secretary of Agriculture is directed by a federal statute to establish quarantine in the several States and Territories which he may find containing live stock affected with contagious diseases, and to make rules and regulations for interstate shipment of stock from such sections. And at the same time, State authorities under a State law, are given the same authority, the two authorities are in conflict and the federal law must supercede that of the State.

5. COURTS: Concurrent Jurisdiction: Quiescence: Superior and Inferior. While two concurrent jurisdictions may exist together when one is quiescent, yet when both are directed to lay hold of the same matter at the same time, the one inferior in authority must give way to the Superior.

Appeal from Grundy Circuit Court.—*Hon. Fred Lamb,* Judge.

REVERSED.

*Frank W. M'Allister* and *Henry B. Hunt* for respondent.

*Fred S. Hudson* for appellant.

ELLISON, P. J.—The prosecuting attorney of Grundy county filed an information against the defendant in which he charged it with a violation of section 717, Revised Statute 1909, relating to the quarantine of cattle shipped from other States into this State. Defendant was convicted in the trial court and fined one thousand dollars. An appeal was taken to the Supreme court, but was transferred to this court on the ground that this court had and the Supreme court had not, jurisdiction of the case.

The statute referred to above reads as follows; "The governor of Missouri, may in his discretion, order said veterinary surgeon to visit any State or territory, and investigate any dangerous or infectious disease said to exist in any designated locality in the

State named and report to the governor the result of said investigation, together with such suggestions that he may deem proper and right. On receipt of such report, or any official report of the State veterinarian, the governor may call the state board of agriculture and the state veterinary surgeon together, and that body and said veterinary surgeon may, if deemed wise, arrange and adjust such rules and regulations as safety may demand for the transportation of live stock through or into this State from any State or territory, or any foreign country or parts thereof, where dangerous, contagious or infectious diseases may exist. Such rules and regulations shall not be in contradiction with constitutional laws of transportation and commerce, and shall be subject to the approval of the governor.

The governor, on the approval of such rules and regulations, shall issue his proclamation, scheduling and quarantining against such localities in which domestic animals may be considered as capable of conveying infections or contagious diseases and prohibit the importation and the unloading in this State of any live stock of the kind capable of causing such disease, except under the aforesaid rules and regulations. Such rules and regulations, after approval by the governor, shall be sent to all corporations or other agencies doing the business of transportation or conveying live stock through or into the State of Missouri; and any corporation or agency or individuals who shall violate such rules and regulations by transporting prohibited animals, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than a thousand dollars nor more then ten thousand dollars for each and every offense, and shall be liable for any and all damages or loss that may be sustained by any party, or parties by reason of such importation or transportation: "Provided, that in no case shall such corporations or agencies or individual be liable for any damages resulting from the shipment of stock into this State which has been inspected by the proper authorities and a certificate of health as to same having been

given by said authorities. Such penalty shall be recovered in any county in this State into or through which such stock is brought upon information filed in the circuit court of any such county."

Taking this statute for authority, the governor and state board of agriculture in September, 1911, established a quarantine against all the States of the Union, and rules and regulations were established and promulgated. It appears that defendant engaged to carry three car loads of cattle from Waucoma, Iowa, to Kansas City in this State. After the cattle were loaded the owner received a telegram that there was a quarantine against the Kansas City stock yards and he then had defendant transport them to Galt, a town in Grundy county, Missouri. On their arrival at Galt they were quarantined by the State Veterinary, and this prosecution followed.

The point made by defendant is that the shipment being interstate commerce and the federal government, as a proper part of its regulation of such commerce having taken over to itself the regulation of quarantine, its action has superceded the State law, and therefore this prosecution resulting in the penalty imposed on defendant under the State statute must fail.

Undoubtedly the shipment in question from a point in Iowa to a point in Missouri was interstate commerce. Undoubtedly Congress has the power; granted by the Federal Constitution, to regulate all material phases of such commerce to the exclusion of all state regulations and penalties. Nor can there be any doubt that the matter of quarantine of live stock for shipment or transportation, "from State to State is a branch of interstate commerce and that any specified rule or regulation in respect of such transportation, which Congress may lawfully prescribe or authorize and which may properly be deemed a regulation of such commerce, is paramount throughout the Union. So that when the entire subject of the transportation of live stock from one State to another is taken under direct national supervision and a system

devised by which diseased stock may be excluded from interstate commerce, all local or State regulations in respect of such matters and covering the same ground will cease to have any force, whether formally abrogated or not; and such rules and regulations as Congress may lawfully prescribe or authorize will alone control." [Reid v. Colorado, 187 U. S. 137, 146.]

But where the act of the State does not unduly hinder or embarrass such commerce it may lawfully prescribe regulations in relation thereto: yet when "Congress speaks upon the subject," it supercedes all State regulations. [Adams Express Co. v. Croninger, 226 U. S. 491, 500; Southern Ry. Co. v. Reid, 222 U. S. 424, 436; Western Union Tel. Co. v. James, 162 U. S. 650, 660; Minnesota Rate Cases, 230 U. S. 352, 402, 405, 408, 409; Southern Ry. Co. v. Railroad, 236 U. S. 409, 446; Davis v. Western Union Tel. Co., 198 Mo. App. 692.]

The decisive question is: has Congress taken to itself the regulation of quarantine for cattle in interstate shipments? In the year 1884, Congress established certain rules and regulations concerning quarantine of cattle. [23 U. S. Statute, p. 31, Chap. 60.] But it was only partial. In fact the act provided or recognized joint or concurrent jurisdiction by the State; and except in certain particulars, that statute "left a wide field for the exercise by the state of their power, by appropriate regulations, to protect their domestic animals against contagious, infectious and communicable diseases." [Reid v. Colorado, 187 U. S. 137, 147.] But since the date of that Statute, to-wit, March 3, 1905, Congress passed the act found in 33 U. S. Statute, p. 1264, Chap. 1496, entitled: "An act to enable the Secretary of Agriculture to establish and maintain quarantine districts, to permit and regulate the movement of cattle and other live stock therefrom." It omits joint authority with the States and embraces *exclusive* federal control. It is therefore a statute much more comprehensive than the former one; as witness the following: In the first section, the Secretary of

200 M. A.—8.

Agriculture is *directed* to quarantine any part of the United States, when *he* shall determine that live stock in any such part are affected with contagious or infectious disease, and he shall give notice thereof to all transportation companies doing business therein.

Section 2, provides that no railroad or other transportation company shall receive in the quarantined section for shipment into any other State, nor shall any one drive on foot into another State, any live stock, "except as hereinafter provided."

Section 3, directs the Secretary of Agriculture, "when the public safety will permit, to make and promulgate rules and regulations *which shall permit and govern the inspection, disinfection, certification, treatment, handling, and method and manner of delivery and shipment of cattle or other live stock from quarantined State to any other State,"* of which he shall give notice.

Section 4, declares that "it shall be unlawful to move or allow to be moved any cattle or other live stock from any quarantined State . . . *in manner or method or under conditions other than those prescribed by the Secretary of Agriculture."* And section 6, prescribes a penalty of from one hundred to one thousand dollars against any one violating sections 2 and 4 of the act.

By comparing the State statute with the act of Congress just noted, it will be seen that they remit the same question and regulation thereof, to separate and independent bodies, or jurisdictions. That each jurisdiction is clothed with the same power over the same subject-matter, with the inevitable result of conflict and consequent hindrance and embarrassment to interstate commerce. The Secretary of Agriculture and the Governor of the state, in conjunction with the State Board of Agriculture, as distinct bodies, are empowered by the respective statutes to declare quarantine and to make and promulgate rules and regulations respecting the transportation of live stock into this State. Each is required to give notice of the regulations to trans-

portation companies and large (but different) penalties are inflicted by each for a violation of the regulations and rules of each, respectively. Illustration is not needed to show the endless confusion and embarrassment to interstate commerce and the companies transporting it in endeavoring to comply with both laws. Two concurrent jurisdictions may exist together when one is quiescent; but when both are commanded to lay hold of the same matter at the same time, confusion and conflict will follow, unless one is the superior, and which when called into exercise of its power, will supercede the other. In the present instance the federal statute, under the authority of the constitution of the United States, supplants that of the State.

But it is insisted by the State that until the Secretary of Agriculture acts under the authority given him by Congress and declares quarantine against the State of Iowa the superior authority of Congress could not be considered to have been asserted, and hence the State had authority to declare quarantine against cattle in Iowa and prescribe rules and regulations against bringing cattle into this State from that State.

We think that is a mistaken view of what Congress did and intended. When Congress, by the act above referred to, "directed" the Secretary of Agriculture to declare quarantine against any State or part of a State whenever, on investigation, he believed the cattle in such State or part thereof, were infected with any contagious disease; and required him to prescribe rules and regulations in all interstate shipments for the transportation of cattle, it assumed control of the subject. By such statute Congress affirmatively and exclusively occupied the field of quarantine as it related to interstate shipments of cattle. It directed the Secretary of Agriculture to ascertain when quarantine was necessary and we must assume that when that official had not quarantined any particular section or district of country, no cause of quarantine existed, and hence any declaration of quarantine by State officers, under the State statute, was usurping the authority of congress

and was a void act as it related to an interstate shipment. The State concedes, as of course it must, that if Congress had acted in regard to quarantine and interstate shipments, it would have superceded the state law; but the error into which the State has fallen is in assuming that Congress had not acted. Congress asserted its authority by putting the matter of quarantine exclusively in the hands of the Secretary of Agriculture, the effect of which was to take such matter out of the hands of State officials acting under a superceded State law. If, as insisted time and again by the State, no federal law was in force until the event of the secretary of Agriculture declaring quarantine, what would be said of a situation where the Secretary did not consider there was cause for quarantine and therefore took no action and the State thought there was? What sort of medley would this opposite action and clash of authority present?

Something similar to the theory presented in this case was advanced in Nor. Pac. Ry. v. Washington, 222 U. S. 370, and Louisville Ry. v. Hughes, 201 Fed. Rep. 727, 746, 751, and it was rejected. We quote the following from the opinion in the first case: "It is elementary, and such is the doctrine announced by the cases to which the court below referred, that the right of a State to apply its police power for the purpose of regulating interstate commerce, in a case like this, exists only from the silence of Congress on the subject, and ceases when Congress acts on the subject or manifests its purpose to call into play its exclusive power. This being the conceded premise on which alone the State law could have been made applicable, it results that as the enactment by Congress of the law, in question was an assertion of its power, by the fact alone of such manifestation that subject was at once removed from the sphere of the operation of the authority of the State." In those cases the federal statute postponed its taking effect until the expiration of a certain time from the date of its enactment. The supreme court of Washington held that there was no federal law during the cur-

rency of the extended time just as the state in this case contends that until the secretary of Agriculture exercises his authority by declaring a quarantine in Iowa, the federal statute remains in abeyance and the State authorities may proceed under the State law. The error lies, as we have already stated, in assuming that the federal statute was not an active agency from the date of its passage, when, in fact, it laid instant hold on the matter of quarantine, in interstate commerce shipments, by putting it under authority of the Secretary with directions that he take charge, pass upon the matter of quarantine and promulgate rules and regulations thereunder, including interstate shipments. And, as has been pointed out by the defendant, that official assumed his duties under the Congressional act by promulgating rules and regulations regarding quarantine, the inspection of cattle, etc., and, in all interstate shipments, as thereunto directed. As a forcible illustration of the general subject see State v. Railroad, 212 Mo. 658, 683, as well as State v. Railroad, 136 Wis. 407.

The conviction of defendant is without legal support. The judgment is reversed. All concur.