ARNIE FOSTER, Respondent, v. WESTERN UNION
TELEGRAPH COMPANY, a Corporation; and
POSTMASTER GENERAL ALBERT SIDNEY
BURLESON, UNITED STATES DIRECTOR in
Charge of Said Corporation, Appellants.

Springfield Court of Appeals, February 28, 1920.

1. **COMMERCE: Message Between Points Within State Routed
Through Another State is Interstate Message Not Subject to State
Special Penalty Statutes; ''Interstate Commerce.''** In an action
for a penalty under Revised Statutes 1909, section 3330, for failure
to promptly transmit and deliver telegraph messages, where it ap-
peared that the message was sent from a point within the State
to another point within the State, but routed through a point in
another State from which it was relayed to its destination, the mes-
sage was an interstate one governed by the Laws of Congress, and
the State Special Penalty Statutes were not applicable.

2. **TELEGRAPHS AND TELEPHONES: Company Operated under
Federal Control cannot be Sued.** Where the President of the United
States, acting under joint resolution of July 16, 1918 (U. S. Comp.
St. Ann. Supp. 1919, section 3115¾x), has taken control of a tele-
graph company's lines through the Postmaster General, and is op-
erating them as a government agency, no suit can be instituted
against the company for delay in delivering messages.

(1)

Appeal from the Circuit Court of Butler County.—*Hon. Almon Ing; Judge.*

REVERSED.

*Francis R. Stark* and *Wammack & Welborn* for appellants.

*New, Miller, Carmack & Winger* of counsel.

*Hill & Phillips* for respondent.

FARRINGTON, J.—The plaintiff brought suit against defendant under section 3330, Revised Statutes 1909, to recover a penalty of $300 provided therein for failure to promptly transmit and deliver telegraphic messages. The petition is in two counts, there being two messages which were sent by the plaintiff from the town of Fisk, in Butler County, Missouri, to the town or Arbyrd, in Dunklin County, Missouri. Both of these messages were sent to James Lancaster, the first one delivered to the telegraph operator at Fisk between three and four o'clock in the afternoon, on November 25, 1916; it was immediately forwarded from Fisk, Missouri, to St. Louis, Mo., and at St. Louis was relayed to Paragould, Ark., and from Paragould, in the State of Arkansas, it was relayed the next morning at 10:35, to Arbyrd. The testimony of Lancaster was that he never received this message, and it was shown that it was not sent out of Paragould to Arbyrd until the next morning because at 7:22 p. m., there was no operator at Arbyrd. The other message was sent by the same party, to the same man, and was filed at Fisk between two and three o'clock in the afternoon on November 27, 1918. It was sent at once to St. Louis, relaid from there to Paragould, Arkansas, and from Paragould it was relayed to Hollywood, the next station on the line of railroad from Arbyrd. It was received at Arbyrd between four and five o'clock

on the evening of November 27, 1918. The operator at Arbyrd was a woman, and the town is an unincorporated village, having no telegraph messengers at the office. It was a rainy evening and night when this message reached Arbyrd, and Lancaster lived from a half to three-quarters of a mile from the telegraph office. The operator noticed that it was an important message, and handed it to Mr. Austin who stayed within a quarter of a mile of Lancaster, but he did not deliver it to Lancaster until between four and five o'clock the next morning. The testimony is undisputed and very conclusive that in sending telegraphic messages from Fisk to Arbyrd, the customary routing is to send them first to St. Louis, then relay to Paragould, Ark., and there relay it to Arbyrd, there being a direct telegraph line between Fisk and St. Louis, another between St. Louis and Paragould, and Arbyrd is on a telegraph line that runs from Paragould eastward. It is located on what is known as the P. S. & E. Railroad, and it is shown that the best route for sending messages from Fisk to any point on the P. S. & E. Railroad is first to St. Louis, then to Paragould, Ark., and then east on this line. There was some attempt on the part of the plaintiff to show a telegraph line wholly within the State of Missouri connecting these points, but at best there was nothing shown other than that they were telegraph lines along railroad tracks, there being no showing that there was a commercial telegraph line or lines that connected Fisk with Arbyrd, owned and operated by the Western Union Telegraph Company or by the Director of Telegraph Companies.

The pleadings show that the Postmaster General of the United States was the Director in charge of the Western Union Telegraph Company's lines, and that messages were received and transmitted on said lines under the management and control of the Director General; the joint resolution of the United States Senate, approved July 16, 1918, authorizing the President of the United States to take possession and control

of the telegraphic systems of the United States, together with a proclamation of the President issued July 22, 1918, whereby the President took possession and assumed control of every telegraphic system within the jurisdiction of the United States, and directed that the possession, control and operation of the lines should be exercised by and through the Postmaster General; and Bulletin No. 1, issued on the 23rd day of July, 1918, by the Postmaster General, and Order No. 1744, issued by the Postmaster General on July 23, 1918, relating to the operation of telegraph and telephone systems of the United States, were all introduced in evidence by the defendant.

At the conclusion of the evidence, the defendant offered an instruction in the nature of a demurrer to the evidence, which was overruled. The cause was submitted to a jury which returned a verdict for the plaintiff on both counts against the Western Union Telegraph Company, a corporation, and against the Postmaster General, Alfred Sidney Burleson, United States Director in charge of said corporation; judgment was rendered accordingly, and it is from this that appellants bring the cause here.

There are a number of reasons why the plaintiff cannot prevail in this action. The first is that there is a failure on plaintiff's part to show any delay in one of the messages. The addressee lived a half to three-quarters of a mile out of the town of Arbyrd, away from the telegraph station which was in charge of a young lady; there was no messenger there, and the usual manner in which this communication would have reached Lancaster would have been by the agent mailing the message through the postoffice at Arbyrd, and in that case he would not have received the message as early as he did receive it by her handing it to a party who lived out in his neighborhood, and who did in fact give it to him between four and five o'clock in the morning. Again, plaintiff's testimony failed to show that this message was not sent the most direct route

from Fisk to Arbyrd. If from plaintiff's evidence it could be inferred that there were telegraph lines which connected these two towns, lying wholly within the State of Missouri, the uncontradicted showing is that to have forwarded it over these lines would have required relays and delays. The route the message was sent, as shown by the testimony, was to St. Louis, where there was an operator working on this character of business to forward it and expedite it as quickly as possible. It went from there to Paragould, Ark., where there was also a regular operator, put there to relay messages for that part of the territory to which this message was going. It is also shown that the distance the message may travel in no way affects the time of its delivery to the addressee; and it is shown without controversy that this message took the route that was ordinary given for messages going from ·Fisk to Arbyrd. This being true, the message was an interstate message, and all questions concerning it are to be governed by the laws of Congress, and the special penalty statutes imposed by the laws of Missouri on interstate matters are not applicable to this case. This has been recently decided in this State in two cases. [See Taylor v. Western Union Telegraph Company, 199 Mo. App. 624, 204 S. W. 818, and Davis v. Western Union Telegraph Company, 198 Mo. App. 692, 202 S. W. 292.] These cases are in line with the following decisions of this State: Hanley v. Kansas City Ry. Co., 187 U. S. 671, 47 Law Ed. 333; Bateman v. Western Union Telegraph Co., 93 S. E. 467; Western Union Telegraph Company v. Kaufman, 162 Pac. 708; Western Union Telegraph Co. v. Bolling, 91 S. E. 154.

We must, therefore, hold, in the first place, that no suit could be maintained by any one under the penalty statute, section 3330, Revised Statutes 1909, against any one who had the control of this message because it was an interstate message, concerning which the Missouri statute cannot operate. In the next place, no suit could possibly be instituted against the Western Union Tele-

graph Company because it has been expressly held by the highest authority that when the President, acting under the power given him by Congress, took charge of the telegraph lines of the United States, such lines were then operated as a government agency. [Dakota Central Telephone Co. v. State of South Dakota, 39 U. S. Supreme Court Rep. 507; Advance Opinions Law Ed., No. 16, page 538; Commercial Cable Co. v. Burleson, 39 U. S. Supreme Court Report, 512; State of Kansas v. Burleson, 39 U. S. Supreme Court, 512; Burleson v. Dempsey, 39 U. S. Supreme Court Rep. 51; McLeod v. New Eng. Telephone Co., 39 U. S. Supreme Court Rep. 511; State of Alabama ex rel. Smith v. Burleson, 82 So. 458; State of Miss. ex rel. Collins v. Cum. Tel. & Tel. Co. et al, 82 So. 311; So. Bell Tel. & Tel. Co. v. Railroad Commissioners, of Florida, 82 So. 303; Schumacher v. Pa. Railroad Company, 17 N. Y. Supple. 84; Postal Telegraph-Cable Company, Plaintiff in Error, v. Warren-Goodwin Lumber Company, decided by the Supreme Court of the United States on a Writ of *Certiorari* to the Supreme Court of the State of Mississippi, Opinion delivered by Chief Justice White, December 8, 1919.]

It appeals that no order was ever made with reference to telegraph lines such as was made concerning the operation of railroads, that is to permit litigants who based causes of action arising out of the operation of the railroads or carrier to substitute the Director General of Railroads in place of the carriers.

Under the Supreme Court authorities heretofore cited, and under the recent case of Rochel Candidate v. Western Union Telegraph Company, decided by the Supreme Court of Alabama, at the October Term, 1919, in an opinion by McClellan, Judge, we must hold that this penalty provision could not be enforced against the United States Government while it was operating the telephone lines.

In the brief furnished by appellants are set out some of the senatorial debates under this act, as printed

in the Congressional Records June 10, 1919, being Vol. 58, No. 20, pages 961-962, wherein it would appear that the consensus of opinion of the senators in discussing this matter was that any liability to individuals on account of negligence, or growing out of the operation of the lines while the government was in control might be enforced through the United States Court of Claims.

The judgment in this case is clearly erroneous and without foundation of law and must be reversed; it is so ordered.

*Sturgis, P. J.,* and *Bradley, J.,* concur.