## WESTERN UNION TELEGRAPH COMPANY v. SIMS.

[No. 23,628. Filed June 21, 1921.]

1. COMMERCE.—*Interstate Commerce.— Regulation.— Power of States.*—The states have surrendered their power to regulate commerce to the federal government, but, until the latter takes possession of the entire field, the states, as to that unoccupied, may exercise limited authority in the aid of commerce, but their power will be upheld only so long as the exercise thereof does not affect the conduct of a company engaged in interstate commerce in the performance of its duties in other states. p. 652.

2. COMMERCE.—*Interstate Commerce.— Telegraph.—Regulation. —Power of Congress.—Statutes.*—The provisions of the act of June 18, 1910 (§8563 U. S. Comp. Stat., 1916, 36 Stat. at L. 539 ch. 309), bringing telegraph companies under the act to regulate commerce, as well as placing them under the administrative control of the Interstate Commerce Commission clearly establish the purpose of Congress to subject such companies to a uniform national rule, leaving no room for the exercise by the state of the power to regulate by penalizing the negligent failure to deliver promptly an interstate telegram, as attempted by §§5780, 5781 Burns 1914, Acts 1885 p. 151. p. 653.

From Marion Superior Court (104,873); *Theophilus J. Moll,* Judge.

Action by Frank Sims against the Western Union Telegraph Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Pickens, Moores, Davidson & Pickens,* for appellant. *James E. Rocap,* for appellee.

MYERS, J.—This was an action by appellee against appellant to recover a statutory penalty of $100 for failure to deliver a telegram "with impartiality and in good faith." §§1, 3, Acts 1885 p. 151, §§5780, 5781 Burns 1914.

In the instant case the telegram originated at Jacksonville, Fla., where appellant received it for transmis-

sion and delivery to the addressee, Fidelity Trust Company, Indianapolis, Indiana. Appellant maintained offices in both cities and was engaged in transmitting telegrams between these two points. The telegram was received by appellant at its Jacksonville office on November 6, 1915, and at its Indianapolis office at 5:14 p.m. the same day, but was not delivered until the following day.

Appellee obtained a judgment in the court below for $100. The errors assigned challenge the rulings of the court on the pleadings which resulted in the judgment for a reversal of which this appeal is prosecuted.

We are first confronted with the proposition that the statute which provides the penalty sought to be collected in this action is unconstitutional in that it violates Art. 1, §8, of the Constitution of the United States. Under this provision of the Constitution, Congress has power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." It will thus be seen that the states have surrendered their power to regulate commerce to the federal government, but until the latter takes possession of the entire field, the states as to that unoccupied, may exercise limited authority in the aid of commerce. However, the states' power in this respect will be upheld only so long as the exercise thereof does not affect the conduct of a company engaged in interstate commerce in the performance of its duties in other states. *Western Union Telegraph Co.* v. *James* (1896), 162 U. S. 650, 16 Sup. Ct. 934, 40 L. Ed. 1105.

When the law of 1885, *supra*, was passed, Congress had not covered the entire subject of commerce by assuming to regulate telegraph, and other companies of like nature, although the courts had frequently held that intercourse between the states by telegraph is interstate commerce. *Telegraph Co.* v. *Texas* (1881), 105 U. S.

460, 26 L. Ed. 1067; *Western Union Tel. Co.* v. *Pendleton* (1887), 122 U. S. 347, 7 Sup. Ct. 1126, 30 L. Ed. 1187; *Western Union Tel. Co.* v. *Milling Co.* (1910), 218 U. S. 406, 31 Sup. Ct. 59, 54 L. Ed. 1008, 36 L. R. A. (N. S.) 220, 21 Ann. Cas. 815.

In this case, it must be conceded that the telegram in question was interstate business, and was handled by a company engaged in interstate commerce. With these outstanding facts before us, the question presented does not depend upon the constitutionality of the act of 1885, ·*supra,* if it appears that Congress has manifested a purpose to exercise its paramount authority over the subject. If it has, the state law must yield to the regulation of Congress within the sphere of its delegated power. *Reid* v. *Colorado* (1902), 187 U. S. 137, 23 Sup. Ct. 92, 42 L. Ed. 108.

In the instant case, then, the only question is: Has Congress acted? Our attention has been called to the act of June 18, 1910, whereby Congress amended the act to regulate commerce. §8563 U. S. Comp. Stat. 1916, 36 Stat. at L. 539, ch. 309. As to the effect of this act, the court in *Western Union Tel. Co.* v. *Boegli* (1920), 251 U. S. 315, 40 Sup. Ct. 167, 64 L. Ed. 281, said: "We are of opinion that the provisions of the statute bringing telegraph companies under the Act to Regulate Commerce as well as placing them under the administrative control of the Interstate Commerce Commission so clearly establish the purpose of Congress to subject such companies to a uniform national rule as to cause it to be certain that there was no room thereafter for the exercise by the several States of power to regulate, by penalizing the negligent failure to deliver promptly an interstate telegram, and that the court below erred therefore in imposing the penalty fixed by the state statute."

On the authority of that case, the judgment in the

case at bar is reversed, with instructions to sustain appellant's demurrer to the complaint, and for further proceedings not inconsistent with this opinion.