EDGAR J. WARD, RESPONDENT, v. WESTERN UNION TELEGRAPH CO., APPELLANT.

Kansas City Court of Appeals. November 11, 1929.

*Murrell & Murrell* and *Roland A. Zeigel* for respondent.

*Fred S. Hudson* and *Frederick E. Whitten* for appellant.

*Winger, Reeder, Barker, Gumbiner & Hazard* of Counsel.

ARNOLD, J.—This is an action by the sender of a telegraph message to recover the penalty provided by Section 10136, Revised Statutes 1919, in the amount of $300, and is based upon the failure of defendant to transmit and deliver the message promptly.

The petition alleges that on November 26, 1925, at about 12 o'clock P. M., plaintiff delivered to defendant's agent at its office in Kirksville, Missouri, for transmission and delivery to Mr. Arold Hays, Monroe City, Missouri, a message and dispatch as follows:

"Kirksville, Missouri, November 26, 1925.

"Mr. Arold Hays,

"Monroe City, Missouri.

"Meet number twelve Friday morning.

"Edgar J. Ward."

That, upon delivery of the message to defendant's agent as aforesaid, the usual charges were paid for the sending and delivery thereof, as per defendant's established rules and regulations; that the same was the amount demanded by defendant's agent; that the message was received by defendant's agent for prompt transmission and delivery; that the addressee was at Monroe City at the time, and by the exercise of ordinary care could have been found by defendant and said message delivered to him; that defendant did not transmit and deliver said message promptly, and did not use due diligence to transmit and deliver the same, but in fact said message was not transmitted and delivered to addressee, and never has been delivered.

.The first answer is a general denial. The first amended answer admits that at the times referred to in the petition and since, defendant was and is a corporation engaged in the business of transmitting and delivering telegraphic messages among and between different points in the United States, among others from the city of Kirksville to the city of Monroe, in the State of Missouri; admits that on November 26, 1925, the message set out in plaintiff's petition was delivered to it for transmission and delivery; admits the same was not delivered to addressee therein, and denies generally each and every other allegation in the petition. As affirmative defense, the answer avers said message was received by it at Kirksville, Mo., for transmission and delivery to addressee at Monroe City, Mo.; that, at said time and for many months prior thereto and now, the regular prescribed, established and observed routing of telegraph messages between Kirksville and Monroe City, Mo., carried said message out of Missouri, into and through the State of Kansas before its destination was reached, and for that reason it became and was an interstate message when received for transmission and delivery at the office of defendant at Kirksville, Mo.; that, if said message had been transmitted and delivered to addressee, it would have passed over and along the following route:

"From Kirksville, Missouri, to St. Louis, Missouri, from St. Louis, Missouri, to Kansas City, Missouri, from Kansas City, Missouri, it would have followed the line of the Missouri Pacific Railroad Company into and through various points in the State of Kansas, to St.

Joseph, Missouri, over a Burlington wire to its destination, Monroe City, Missouri, and for said reason said message was an interstate message."

That, by the Act of Congress approved June 18, 1910 (36 U. S. Stat. at Large, 539) and the acts supplemental thereto and in amendment thereof, the Congress of the United States entered into and assumed charge

"of the regulation of the field of interstate communication by telegraph, and thereby removed and exempted said telegraphic interstate communication from the field of State regulation of interference, and undertook to and did confer upon the Interstate Commerce Commission full power over all rates, charges, facilities, classifications, penalties and practices of telegraph companies engaged in interstate commerce with reference to such interstate commerce, and particularly conferred the placing and imposing of all penalties against such telegraph companies upon said Interstate Commerce Commission, and it has ever since retained and still retains such charge; that by reason thereof the statutes of the State of Missouri providing a penalty for failure to promptly transmit and deliver messages has no force and effect with relation to interstate messages, and if applied to or enforced against the defendant with reference to the particular message complained of, would be an attempt on the part of the Legislature of said State of Missouri to regulate commerce between the states," and in conflict with said Act of Congress.

"That said Act of Congress nullified and rendered void the statute of Missouri on which plaintiff seeks to recover the penalty prayed for in his petition and to hold the defendant liable for the penalty so prescribed by statutes of said State of Missouri would be in contravention of Article One, Section 8, Subdivision 3, of the Constitution of the United States and the Acts of Congress passed in pursuance thereof, and especially said Act of June 18, 1910, above referred to."

Plaintiff filed no reply and upon the issues thus made, by agreement of parties, the cause was tried to the court without the aid of a jury. No declarations of law or findings of fact were asked or given. The judgment was for plaintiff for the statutory penalty of $300, of which $200 was to be retained by plaintiff and $100 to be paid into the school fund of Adair county, Missouri.

Motions for a new trial and in arrest of judgment were overruled and defendant has appealed.

There are but two assignments of error, to-wit, (1) the court erred in excluding competent, relevant and material evidence offered by defendant; (2) the judgment is against the weight of the evidence, and under the pleadings and evidence judgment should

have been for the defendant. Only one witness was introduced and that for defendant, one Joe Tyler who testified he was and for a number of years had been in the employ of defendant in the capacity of "Testing and Regularity Chief" of defendant's Kansas City office; that in such capacity it is his duty to see that the wire circuits over which messages are sent are made up in accordance with instructions furnished the Kansas City office from the head office of the company in New York. He stated he had all the instructions for routing messages and that it is his duty to see that the circuits are made up accordingly.

Defendant's first assignment of error is directed to the cross-examination of this witness. Plaintiff's counsel had asked the witness if it was a fact that, regardless of what town in Missouri the addressee lived in, the policy of defendant was to route messages out of the State of Missouri. Defendant's counsel objected upon the theory that it was immaterial. The objection was overruled. Plaintiff's counsel then asked the witness if it was not a fact that every message sent to Kansas City to be relayed from St. Louis entered Kansas and returned to Missouri. No objection was offered and witness answered "No." It is defendant's position that this line of cross-examination implied, by insinuation, that such a routing of messages was made to avoid the penalty statute in Missouri, and that defendant was within its rights in clarifying the situation by redirect examination. In this attempt the following occurred:

"Q. Now, I will ask you this question, if you know: Was the route through which this message would have gone from Kansas City, Missouri up to St. Joe, as you have designated, over the Missouri Pacific lines through Kansas, was that route made, if you know, by the Western Union, or anyone in their behalf, with the idea of avoiding the effect of the penalty statute of Missouri?

"Mr. Murrell: We are objecting to that as asking for an opinion and conclusion and argumentative. The witness couldn't know.

"The Court: Well, the witness stated that he didn't know, that he received his instructions from New York. It would be based on hearsay."

To which ruling of the court the defendant by its counsel, then and there duly excepted and saved its exception.

"Mr. Whitten: But he might know what their policy was.

"The Court: It would be based on hearsay. Sustained."

We think the ruling on the objection, as indicated by the quoted portion of the evidence, was proper. The answer either way could have been only hearsay. After the ruling of the court on the objection previously referred to, the witness had answered "No" and defendant's cause was not prejudiced by the ruling of the court. We rule against defendant on its first assignment of error.

20

In support of its remaining assignment of error, defendant states that the only question for determination is whether the message was interstate commerce. It is not disputed that if it is interstate commerce plaintiff may not recover. The first amended answer places this question squarely in issue, and the cause was tried throughout upon that issue, so that a determination of whether or not the trial court erred in holding the message was intrastate will determine this appeal.

This court held in David v. Telegraph Co., 198 Mo. App. 692, 202 S. W. 292, that if the action is to be governed by the penal sections of the Missouri statutes, the message must be intrastate; but if interstate, the Federal statutes govern and the Federal decisions interpreting such statutes are our guides in the matter. We have no doubt defendant is right in its position that the message is interstate. In the Davis case, which is almost identical with the case at bar, Ellison, J., speaking for this court, said:

"Although both the sending and receiving points were in Missouri, the fact that a part of the route of transmission was through Iowa characterizes the message as interstate. The route must be entirely domestic to keep it from the cover of the Federal statute. (Citing cases.)" (l. c. 697.)

Congress, by its Act of June 18, 1910 (Ch. 309, Sec. 7, 36 U. S. Stat. at Large, 544, Comp. Stat. 1913, Sec. 8563), placed telegraph companies under that legislation as interstate commerce. By that enactment it has been held wherever the question has arisen, the Congress took possession of the entire ground of interstate commerce by telegraph, thus superseding all penal statutes of the kind upon which this action is founded. [Adams Exp. Co. v. Croninger, 226 U. S. 491; Telegraph Co. v. Bilisoly, 116 Va. 562.] This fact was recognized by our Supreme Court in Donovan v. Wells-Fargo & Co., 265 Mo. 291, 177 S. W. 839, wherein it is said:

"In the light of the recent rulings of the Supreme Court of the United States our decisions have been wholly superseded and become matters of ancient legal history or legal curiosity only. (Citing cases.)"

On the same question we have the guidance of the Supreme Court of the United States in the case of Western Union Tel. Co. v. Speight, 254 U. S. 17, decided in 1920. That was a suit brought in a State court to recover for mental suffering caused by mistake in delivering a telegraph message reading: "Father died this morning. Funeral tomorrow, 10:10 A. M." The message was dated January 24th but when delivered to the plaintiff on the 24th, it bore date of January 23d, and thus caused addressee to fail to attend the funeral as she otherwise would have done. The message was from Greenville, N. C., to Rosemary in the same State and was transmitted from Green-

ville through Richmond, Va., and Norfolk to Roanoke Rapids, the delivery point for Rosemary. This was the route ordinarily used by the company for years and the company defended on the ground (as here) that the message was sent in interstate commerce and therefore a suit could not be maintained for mental suffering alone. [Express Company v. Byers, 240 U. S. 612.] The jury found the message was sent out of North Carolina into Virginia for the purpose of fraudulently evading liability under the North Carolina laws, and gave plaintiff a verdict. The presiding judge then set the verdict aside "as a matter of law" and ordered a nonsuit. But on appeal the State Supreme Court set aside the nonsuit and directed a judgment be entered on the verdict. Mr. Justice HOLMES who wrote the opinion of the U. S. Supreme Court, where the case was finally determined, said:

"We are of opinion that the judge presiding at the trial was right and that the Supreme Court was wrong. Even if there had been any duty on the part of the telegraph company to confine the transmission to North Carolina, it did not do so. The transmission of a message through two states is interstate commerce as a matter of fact. [Hanley v. K. C. S. Ry. Co., 187 U. S. 617.] The fact must be tested by the actual transaction."

Further in the Speight case the opinion states it would have been physically possible to send the message direct from Weldon, but would have required a rearrangement of the wires' and more operators. The course adopted was more convenient and less expensive for the company and there was nothing to show motives except facts. As things were, the message was sent in the quickest way. Further, the opinion reads:

"The court below did not rely primarily upon the finding of the jury as to the purpose of the arrangement but held that when as here the termini were in the same State the business was intrastate unless it was necessary to cross the territory of another State in order to reach the final point. This, as we have said, is not the law. It did however lay down that the burden was on the company to show that what was done 'was not done to evade the jurisdiction of the State.' If the motive were material, as to which we express no opinion, this again is a mistake. The burden was on the plaintiff to make out her case. Moreover, the motive would not have made the business intrastate. If the mode of transmission adopted had been unreasonable as against the plaintiff a different question would arise, but in that case liability, if it existed, would not be a liability for an intrastate transaction that never took place but for the unwarranted conduct and the resulting loss."

There is a difference between the facts in the Speight case and the one at bar. There the message was wrongfully dated but delivered.

In the case at bar the message was filed and accepted but never delivered. Plaintiff insists that this fact stamps the message as intrastate. This position of plaintiff is untenable under the rulings of the U. S. Supreme Court in Railway v. Stroud, 267 U. S. 404, 45 Sup. Ct. Rep. 243, opinion by Mr. Justice BUTLER. In the Stroud case no shipments were ever made. In the case at bar, no message was ever sent. In Western Union Tel. Co. v. Czizek, 264 U. S. 328, 44 Sup. Ct. Rep. 228, the court held that where through inadvertence an interstate message was not sent, plaintiff cannot maintain a damage suit bottomed upon the provisions of a state statute. In Taylor v. Western Union Tel. Co., 199 Mo. App. 624, 204 S. W. 818, this court held:

"Of course, the fact that the origin and destination of the message was in the State of Missouri did not make the message an intrastate one, when its course or route took it outside of the State."

In that case, as in the case at bar, there was some evidence that a route wholly within the State could have been used but was not. On this point, see also: Tel. Co. v. Bushnell (Ind.), 128 N. E. 49, 51; Tel. Co. v. Throop (Ind.), 129 N. E. 875; Tel. Co. v. Sims (Ind.), 131 N. E. 520; State ex rel. v. Railway (Kans.), 232 Pac. 1038; Shannon v. Tel. Co. (Ark.), 238 S. W. 59.

As the judgment herein will be reversed for reasons above stated we need not discuss and determine other questions urged by defendant in support of its appeal. The judgment is reversed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.