# FRED W. MORRIS v. KANSAS CITY LIGHT & POWER COMPANY, Appellant.

### In Banc, February 11, 1924.

1. **ABSTRACT:  Defective:  Supplement Filed After Transfer from Division.**   Upon rehearing in Division or after transfer to Court in Banc, a case stands just as if it had not been previously heard and submitted.   After the case had been submitted in Division and transferred to Court in Banc, respondent filed a motion to dismiss the appeal on the alleged ground that the abstract fails to show that the pleadings, verdict, judgment, motion for new trial, motion in arrest or a bill of exceptions had been filed in any court, and that it further fails to show that a transcript of the judgment and the order granting an appeal therefrom had been filed in this court. Pending said motion appellant filed a supplemental abstract showing all the record matters alleged not to have been shown by the

original abstract, and thereupon respondent filed a motion to strike out such supplemental abstract. *Held*, that the alleged defects in the original abstract were cured by the supplemental abstract, and such defects will not be considered.

2. **NEGLIGENCE:** *Contributory, Barring Recovery: Falling Electric Wire: Proximate Cause.* Amidst a midsummer thunderstorm, accompanied by frequent lightning and a strong wind and lasting more than an hour and until seven o'clock in the evening, an electric wire parted or was broken or burned in two midway between two supporting poles, and one of its ends fell upon or near a sidewalk, where it emitted intermittent flashes of light. Plaintiff, who, during a lull in the storm, was returning from his work at about seven o'clock, saw the live wire lying there, avoided it, went to his apartment near by, procured a broom, returned to the scene, and after looking over the situation, with the brush of the broom carefully pushed "the loop of the wire" off of the sidewalk. Going up the sidewalk, he warned two approaching children to avoid the wire. He then returned, broom in hand, and when he was within two feet of the wire it began to writhe and sizzle, and falling out of a tree, upon the branches of which a portion of it was resting, struck him, inflicting severe injuries. He was thirty-five years of age, a salesman for bakery products operating over a city route, and was in a position to see how the wire was hanging in the tree after it had broken or burned in two. These facts were established by his own proof. *Held*, that, assuming that defendant was guilty of actionable negligence and that such negligence continued until the instant he was injured, plaintiff's own contributory negligence, as a matter of law, bars a recovery.

*Held*, by WALKER, J., dissenting, *first*, that as the wire fell from the tree and struck plaintiff as he was passing, the defense of contributory negligence is eliminated from the case. *Second*, that defendant was charged with the highest degree of care known and exercised by prudent men; that the defendant's manifestation of a plain neglect of duty is shown by the fact that the wire which caused the injury was a high-voltage wire of twenty-three hundred volts, and that for a week to a month before the accident it flashed and sparkled at the point where it separated early in the storm, which shows that it was not properly insulated; that defendant's plain neglect of duty is further manifested by the fact that, after having received actual notice, by three successive telephone calls, the first two hours and the last five minutes before the accident occurred, that the wire had broken and fallen into a tree and was hanging over the sidewalk, it gave no heed to such warning, and, therefore, it was for the jury to determine whether defendant's negligence was the proximate cause of the injury.

3. ——: ——: ——: Proximate Cause: Act of God. Where despite the negligence of defendant, plaintiff would not have been injured had it not been for his own negligent act in voluntarily and unnecessarily placing himself in a position of known danger, his negligence is the proximate cause of his injury, and he cannot recover damages.

*Held*, by WALKER, J., dissenting, that where the evidence shows that defendant has been guilty of a plain neglect of duty, which if exercised would have avoided the injury, the courts cannot say as a matter of law that plaintiff's negligence was the proximate cause of the injury, nor is his injury to be attributed wholly to unavoidable accident.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

REVERSED.

*John H. Lucas, William C. Lucas* and *Ludwick Graves* for appellant.

(1) Respondent was guilty of contributory negligence as a matter of law. Frauenthal v. Laclede Gaslight Co., 67 Mo. App. 1; Junior v. Elec. L. & P. Co., 127 Mo. 79; Biddlecom v. Grain Co., 178 S. W. 750; Shade v. Bay Counties Power Co., 152 Cal. 10; Capital Gas Co. v. Davis, 128 S. W. 1062, 138 Ky. 628. Lydon v. Edison Elec. Co., 209 Mass. 529; Johnson v. Elec. Light Co., 78 Neb. 27, 17 L. R. A. (N. S.) 435; McNamee v. Western Union Tel. Co., 125 N. Y. Supp. 622, 140 App. Div. 874; Haertel v. L. & P. Co., 219 Pa. 640; Edmundson v. L. & P. Co., 233 Pa. 591; Bowman v. Mill & Light Co., 158 S. W. 200; Druse v. Power & Light Co., 86 Wash. 519; Wilger v. Traction & Power Co., 160 Wis. 654. (2) The proximate cause of the injury was not any negligent act of the appellant, but: (a) The negligent act of the respondent in pushing or tampering with the wire and in taking hold of or coming in close proximity to said wire. State ex rel. v. Ellison, 271 Mo. 463; Boelsel

v. Wells Fargo & Co., 260 Mo. 463; American Brew. Assn. v. Talbot, 141 Mo. 674; Biddlecom v. Grain Co., 178 S. W. 750; Smith v. Ozark Water Mill Co., 238 S. W. 575. (b) And the breaking of the wire was an act of God, which was unforeseen, and for which appellant was not responsible. Merritt Creamery Co. v. Santa Fe Railroad Co., 139 Mo. App. 149; Lightfoot v. Ry. Co., 126 Mo. App. 532; Lamar Mfg. Co. v. Ry. Co., 117 Mo. App. 453; Moffett Comm. Co. v. Union Pac. Ry. Co., 113 Mo. App. 544; Strack v. Tel. Co., 216 Mo. 601. (3) There was no evidence that appellant had notice that the wire was down before the accident. Strack v. Tel. Co., 216 Mo. 601; Flock v. Santa Fe, 285 Mo. 48. (4) The accident couldn't have happened in the way and in the manner that the respondent contends, as it is against the physical facts as shown by actual measurement and demonstration. The court *nisi* should have granted a new trial on this ground. Sexton v. Street Railway, 255 Mo. 254; Phippin v. Railroad, 196 Mo. 343; Hayden v. Railroad, 124 Mo. 566; Kelsey v. Railroad, 129 Mo. 362; Huggart v. Railroad, 134 Mo. 679; Payne v. Railroad, 136 Mo. 583; Petty v. Railroad, 179 Mo. 666.

*T. J. Madden* and *Harry R. Freeman* for respondent.

(1) The ultimate fact aimed at was the escape of the current which the law says is regarded as almost conclusive proof of negligence. The insulation was old, worn, decayed and in no manner sufficient to confine the current. Knowledge of the insulation was entirely limited to the defendant and its expert servants. The public could not safely examine the insulation except at a safe distance. The insulation was in such condition that it permitted the escape of electric power. That made a prima-facie case under the law. Von Trebra v. Gaslight Co., 209 Mo. 648; Harrison v. Light Co., 195 Mo. 606; Hill v. Union E. L. & P. Co., 260 Mo. 75; Geismann v. Elec. Co., 173 Mo. 654; Hickman v. Light Co., 226 S. W.

573. (2)   Plaintiff was actually discharging defendant's duty in guarding the public from danger, while the defendant took its leisure time to act.  Had the warnings been heeded within anything like reasonable time misfortune would not have befallen the plaintiff.   It is admitted on all hands that the wire was hanging down on the walk or within reach of a child's hand.   Some of the defendant's witnesses placed the wire across the walk and up into plaintiff's front yard.   The wire had been down for about an hour.   Mr. Burgenbaugh narrowly escaped with his life when the wire fell.   After that he walked several blocks to his home and had eaten his dinner before he heard the screams attending the injury to Mr. Morris.   Other people were passing back and forth upon this walk and the plaintiff had pushed the wire from the sidewalk and was guarding the children from its contact.   Mrs. Fritz and Mr. Mohr were urging the defendant's agents to come and take the situation in hand.   But they supinely took their own good time while people passed within reach of this wire which was discharging 2300 volts of death into the walk or tree or anything else it touched.   The conduct of defendant's servants transcends the limits of negligence and enters the region of misdemeanor or crime.   Von Trebra v. Gaslight Co., 209 Mo. 648; Hill v. Union E. L. & P. Co., 260 Mo. 43.   (3)   Counsel seek to evade the issue of defendant's negligence by shifting the contest to the alleged contributory negligence of the plaintiff.   In considering his acts the gross negligence of the defendant must be taken into account for his conduct was colored and influenced by its culpable neglect of duty.   It had created a condition that called for relief from someone.   Every human impulse demanded that the public using this sidewalk be protected from the dangers which lay in its path.   This situation came closer home to the plaintiff than to any of his neighbors and he, acting up to the best that was in him, attempted to discharge the duty that primarily belonged to the defendant, so he cleared the sidewalk of

the wire and guarded these two little children from the danger. Defendant should not be permitted to turn his heroic act to its account as a defense to its own culpability. Hill v. Light Co., 260 Mo. 84; Wagner v. Ry. Co., 133 N. E. 437.

DAVID E. BLAIR, J.—Action for damages for personal injuries caused by a wire of appellant which carried a dangerous current of electricity coming in contact with respondent and seriously injuring him. Trial below resulted in a verdict for respondent in the sum of $25,000. The trial court required a *remittitur* of $10,000. This was entered and judgment was rendered for $15,000. From such judgment an appeal was granted to this court, and the case fell to Division Two, where an opinion was handed down affirming said judgment. Upon dissent of one of the judges of that division and in response to appellant's motion to transfer, the case came to Court en Banc.

I. After the case was transferred here, respondent filed his motion to dismiss the appeal because of alleged fatal defects in the abstract filed by appellant, in that such abstract fails to show that the pleadings, verdict, judgment, motion for new trial, motion in arrest of judgment or bill of exceptions were filed in any court or in any cause, and that such abstract fails to show that a transcript of such judgment and the order granting an appeal therefrom were filed in this court. Said motion was taken with the case and is the first point for our consideration.

Said motion was filed October 9, 1923. On October 16, 1923, appellant filed its supplemental abstract of the record formally showing all the matters alleged not to have been properly shown by the original abstract. On October 30, 1923, respondent filed his motion to strike out such supplemental abstract of the record. The case was set for hearing and was heard on November 3, 1923.

Without considering the merits of respondent's objections to the original abstract, we think the alleged defects therein are cured by the timely filing of the supplemental abstract under the spirit, if not the letter, of the second paragraph of our Rule 11, said paragraph having been adopted as an amendment to our original Rule 11 on December 29, 1920.

If appellant is concluded by the state of the record shown by the abstract on file when the case was argued and submitted in Division Two, as respondent seems to contend, then, by the same reasoning, respondent should be held to have waived such defects because he did not make his objections to such abstract in Division Two within the time prescribed by said rule. However, upon re-hearing in a division or after transfer to Court en Banc, a case stands just as if it had not been previously heard and submitted. [Ricketts v. Hart, 150 Mo. 1. c. 67; Fleisher Bros. v. Hinde, 122 Mo. App. 1. c. 221.]

The motion to dismiss the appeal is overruled.

II. We have reached the conclusion upon the merits of the case that respondent cannot recover because of contributory negligence on his part. Such conclusion obviates the necessity of considering the different state of facts, which the evidence of appellant tended to show, or of considering other assignments of error alleged to have occurred during the progress of the trial.

Contributory
Negligence.

We quote from the divisional opinion as follows:

"At about six o'clock p. m., August 15, 1919, a mid-summer thunderstorm, accompanied by lightning, wind and rain, occurred in Kansas City, which continued for more than an hour. The rain was heavy, the thunder and lightning frequent, and the maximum velocity of the wind, which continued with decreasing fury until after seven o'clock P. M., was about forty-five miles per hour. During the storm the wire which produced the injury parted or was broken or burned in two midway between two supporting poles. One of the ends of the wire fell

upon or near a sidewalk, where it emitted intermittent flashes of light. While it was lying there, the respondent, who was returning from his work at about seven o'clock P. M., during a lull in the storm, saw the live wire and avoiding it went to his apartments near at hand, procured a broom and returned to the scene. After looking over the situation, he reached out with the brush of the broom or that end which in hours of peace is most utilized by the housewife, and carefully pushed what he terms 'the loop of the wire' off of the sidewalk. Going up the  sidewalk, he warned two children who were approaching to avoid the wire. He then returned, broom in hand, and when within two feet of the wire it began to writhe and sizzle and falling out of the tree, upon the branches of which a portion of it was resting, struck him, inflicting the injuries of which he complains. This, in substance, is the testimony of the respondent's witnesses.  .  .  .

"There was testimony showing that the appellant had, from five to six-forty-five P. M., received several notices that the wire was broken and that one end, sparkling and flashing, was hanging over and near the sidewalk. No attention seems to have been paid to these warnings."

The evidence offered by appellant was of such a nature that, if it had been accepted by the jury as true, the verdict should have been for appellant. The injuries sustained by the respondent were of a very serious nature, but it will serve no useful purpose to describe them here.

For the purposes of this opinion we will assume that appellant was guilty of actionable negligence, and that such negligence continued until the instant respondent was injured.

It is perfectly apparent, from his own testimony, that respondent was fully aware that the electric wire in question had broken and fallen upon the sidewalk and that it carried a current of electricity of such high voltage as to render contact with it peril of the most deadly

sort. The fact that he procured a dry broom, and with the brush end pushed the sizzling wire off the sidewalk to a position less threatening to persons using the sidewalk, demonstrates his complete knowledge of the danger which would certainly result from bodily contact with such wire. That he also fully realized the danger of close approach to said wire, is shown by the fact that, after he had pushed it off the sidewalk, he guided two children past the danger at a safe distance from it. Respondent thereafter unnecessarily approached within two feet of the spot where one end of the wire lay on the ground, while part of the wire hung insecurely in the branches of the tree near and above him, with full knowledge of the danger from contact with said wire by touching it or coming so closely to it that it might be blown or fall or writhe against him. Respondent saw the wire hanging in the branches of the tree and, when he first saw it there, sparks and fire were coming from it where it touched the tree, as well as where it touched the sidewalk or parking. He was a man of mature age and abundant experience. He was thirty-three years old and was a salesman for bakery products, operating over a city route. His commendable action in guiding the children past the dangerous situation on a course several feet from the sidewalk shows that he fully appreciated that danger from the situation existed other than that of touching the wire in the position where it then was. He said the wire fell upon him from the tree. He was in a position to see how the wire was hanging in the tree and must be charged with full knowledge of the liklihood of the wire falling from the tree and injuring him. He, better than any one else, could see how securely the wire was lodged in the tree and took the chance of its being so securely lodged that it would not fall. No other conclusion of fact is possible, even under the testimony of respondent himself.

A situation, therefore, arises where, despite the negligence of appellant, respondent would not have been

injured had it not been for his own negligent act in approaching too near the deadly wire with full knowledge of the lethal current of electricity it carried, as well as with full knowledge of all the surrounding conditions and circumstances. Appellant's negligence was therefore not the proximate cause of his injuries. [DeMoss v. Railways Co., 246 S. W. (Mo.) 566.] As such facts appear from respondent's own testimony, and as facts more favorable to a recovery by him do not appear in the record, we must hold that respondent was not entitled to recovery as a matter of law and that the trial court should have so instructed the jury.

Our reports contain many cases holding that, where one voluntarily and unnecessarily places himself in a dangerous situation, fully knowing and realizing the danger of such situation and the hazard to which he is exposing himself in such situation, and is injured thereby, he cannot recover damages for such injuries, notwithstanding the danger which caused such injuries resulted from the negligent act of another. The rule is so well established that citation of authorities is unnecessary. The undisputed facts in this case bring respondent squarely within the application of this rule.

The judgment is reversed. *Woodson, C. J.,* and *Graves* and *White, JJ.,* concur; *James T. Blair* and *Ragland, JJ.,* dissent; *Walker, J.,* dissents in separate opinion filed.

WALKER, J. (dissenting).—In the deductions made from the evidence in the majority opinion, resulting in a reversal of this judgment, I do not concur. A further review of the record since this case was transferred to Banc has but strengthened my conviction as to the appellant's liability.

I.  While little is known, when all has been said, concerning electricity, so prevalent has it use become and so often has its deadly effect, when not under con-

trol, been chronicled, that we are authorized in assuming that the respondent, a man of mature years and average intelligence, knew that it was at least not only hazardous, but extremely so, to attempt to remove a live wire exposed to the possibility of contact in the manner shown. That he carefully avoided it when first coming upon the scene is admitted. Even when he had procured the broom and had gone back to where the wire was lying on or hanging over the sidewalk, he gave evidence of that care usually manifested by one mindful of the dire results that usually follow contact with the electric current. In the exercise of that care in the removal of the wire with the broom he escaped injury. It is with his subsequent conduct, therefore, that we are concerned in determining the appellant's liability.

*Contributory Negligence.*

The testimony connectedly stated shows that after warning the children, he went back to where the wire was hanging or lying, for what purpose is not disclosed by the testimony. The presumption is permissible that he returned for the purpose of warning others, but he had removed the wire from the sidewalk and to persons passing it was no longer an immediate menace. Presumptions as to purpose eliminated, his conduct thereafter as detailed by appellant's witnesses, if it had been given credence by the triers of the fact, is of such a nature as to relieve the appellant of liability. This testimony, however, runs counter to that of respondent's witnesses. According to the former, respondent persisted upon his return in attempting to further remove the wire; according to the latter, no such effort was made, but that the wire fell and struck respondent as he was passing. This sharp conflict in the testimony was resolved by the jury in favor of the respondent. Arguments in opposition to this finding avail nothing unless the testimony relied upon to sustain the verdict was wholly unsubstantial or, in other words, contrary to reason and hence unworthy of belief. That respondent

knew the dangerous character of the wire is demonstrated by the care with which he pushed it from the sidewalk. Armed with this knowledge, to which may be added the admonition given him by the woman who screamed a warning at him as he returned with the broom, it is in ill accord with human experience that he would make a second attempt to further remove the wire in the absence of any purpose in so doing. A more plausible theory is that to be evolved from the respondent's testimony that the wire fell and struck him as he was passing. If this be true, and the jury so found, it will be sufficient to eliminate the defense of contributory negligence from the equation and the probative force of the facts will be sufficient to sustain the verdict.

II.   It was contended that the alleged negligence of the appellant was not the proximate cause of the injury. The degree of care to be exercised by a defendant in a given case is a prime essential in determining whether he has been guilty of negligence. If engaged in the sale and distribution of that subtle and deadly force called electricity, a defendant is as a matter of law charged with the highest degree of care known and exercised by a very prudent person engaged in the same or similar service. [Hill v. Union E. L. & P. Co., 260 Mo. l. c. 75; Von Trebra v. Gasl. Co., 209 Mo. 648.]

In Geismann v. Electric Co., 173 Mo. l. c. 674, the court said: "Electricity is one of the most dangerous agencies ever discovered by human science, and owing to that fact it was the duty of the electric light company to use every protection which was accessible to insulate its wires at all points where the people have the right to go, and to use the utmost care to keep them so; and for personal injuries to a person in a place where he has a right to be without negligence upon his part contributing directly thereto, it is liable in damages." [Citing McLaughlin v. Louisville Electric Light Co., 100 Ky. 173.]

In Hickman v. Light Co., 226 S. W. (Mo.) l. c. 573, this court en banc, said: ''The preservation of human life is paramount to all pecuniary considerations, and the disposition to hold it lightly is not entitled to sympathetic consideration. Every protection afforded by the law to human life should be carefully guarded and preserved. Among them is the rule that the use of this insidious and destructive force involves the exercise of the utmost care to protect others rightfully within the sphere of its deadly action from injury thereby (citing cases). This is especially true 'of high-tension wires suspended over the streets of populous cities or towns; for here the danger is great, and the care exercised must be commensurate with it.' ''

Measured by the rule above announced, do the facts manifest the exercise of such a degree of care as is required to render the defendant immune from liability? The wire which caused the injury was what is termed a primary or a high-voltage wire of twenty-three hundred volts. For sometime before August 15th (the date of the accident), variously estimated from a week to a month, the wire flashed and sparkled at the point where it subsequently separated. This was indicative of a defect liable to result in an injury of which it was the duty of the defendant to take notice.

As we said in Von Trebra v. Gas Light Co., supra: ''It is equally well settled law of this State, that when injury or death is caused by coming in contact with such a wire, it is conclusively presumed that the insulation of the wire was defective. This rule was stated in the case of Geismann v. Missouri-Edison Elec. Co., 173 Mo. l. c. 678, by BURGESS, J., in the following language: 'It follows from these authorities that it was defendant's duty, in the first place, to use every protection which was reasonably accessible to insulate its wires at the point of contact or injury in this case, and to use the utmost care to keep them so, and the mere fact of the death of Geismann is conclusive proof of the defect of the insula-

tion and negligence of the defendant, and as to whether
he was guilty of contributory negligence or not was a
question for the jury.' The opinion in that case, after
a most careful and exhaustive consideration of the legal
propositions involved therein, and in which all of the
authorities of this country bearing upon the questions
were carefully reviewed, enunciated the law as above
stated.''

In Hill v. Union E. L. & P. Co., supra, the court said:
''The importance of this case does not stop with the
poor unfortunate who was so frightfully injured by the
gross negligence of the appellant, but it cuts deep and
to the very quick of the duty of those who handle this
insidious and deadly fiend. And in passing, the fact
should not be overlooked that the public has no access
to the generating or distributing agencies of this highly
useful servant, yet deadly when unharnessed; and for
this reason no one is in a position to protect himself or
herself against its lurking and deadly stroke, but must
depend for their safety upon the intelligence and the
high degree of care the law has so wisely imposed upon
those who are granted the privilege of handling the same
and furnishing it to the public. For this reason all of
the authorities agree that the degree of care required
of such companies must never be reduced, lessened or
lowered.''

The continued existence of the defect cannot in view
of the duty imposed on the defendant, be otherwise con-
strued than as manifesting, if it did not emphasize, a
plain neglect of duty, which in a terse and appropriate
term the law characterizes as negligence.

In addition, the defendant was given actual notice
two hours before the accident of the dangerous condi-
tion of the wire. After it broke, which was some fifty
minutes before respondent appeared on the scene, a wo-
man, who lived directly across the street from where the
accident occurred, testified that she was sitting on her
front porch at the time and saw the condition of the

wire; that she immediately went into her house and called up the appellant and told some one, who answered the 'phone, that the wire had broken and had fallen into a tree and was flashing and sparkling so that the "tree seemed to be on fire; that the wire was hanging over the sidewalk and was awful dangerous." She called the appellant three times, about ten or fifteen minutes apart, and the third time it was twenty minutes to seven. The last time she called "they answered her kind of short," and seemed to be provoked because she had called them so many times. Her recollection was that the respondent "was hurt at fifteen minutes to seven."

In the presence of these facts, not attempted to be contradicted, the conclusion may be fairly deduced that there was absent from the conduct of the appellant that high degree of care required by the law to be exercised by it in the conduct of its business, not only in its neglect to remedy a continuing defect of such duration as to charge it with notice, but its subsequent refusal to do so after repeated notices.

III. In addition it was urged that the breaking and falling of the defective wire was due to the act of God, or, expressed in terms more in accord with modern intelligence, the occurrence of an unavoidable accident due to the action of the elements or a cause which operated without the aid or interference of man. [2 Pars. Con. (5 Ed.) p. 159; Packard v. Taylor, 35 Ark. 402, 37 Am. Rep. 37; Polack v. Pioche, 35 Cal. 416, 95 Am. Dec. 115; Smith v. Western Railroad, 91 Ala. 455, 24 Am. St. 929, 11 L. R. A. 619; 1 Cyc. p. 758 and notes.]

A well-defined limitation regulates the application of this doctrine. In whatever form this plea of freedom from liability is urged to render it effective, it must appear that it was the sole cause of the injury. If therefore the action of the elements is commingled with an act of the defendant as an active co-operative cause of the injury, the defendant will still be held to be liable. [Tranbarger v. Railroad, 250 Mo. l. c. 57; Haney v. City

of Kansas, 94 Mo. l. c. 336; Pruitt v. Railroad, 62 Mo. 542.]

If it be conceded, therefore, that the wire was broken by the force of the wind, although witnesses testified that it was burned in two on account of defective insulation, the neglect of defendant in remedying the defect and its subsequent refusal to do so after actual notice, are such co-operative acts as will render the defendant liable.

In review of the foregoing resume of the facts I am of the opinion that the judgment of the trial court should be affirmed.

Headnote 1: Appeal and Error, 4 C. J. sec. 2087 (1926 Anno); Headnotes 2 and 3: Electricity, 20 C. J. secs. 53, 54.