EDGAR J. WARD, RESPONDENT, v. WESTERN UNION TELEGRAPH CO., APPELLANT.—46 S. W. (2d) 268.

Kansas City Court of Appeals.    January 11, 1932.

*Roland A. Zeigee* and *Murrell & Murrell* for respondent.

*Fred S. Hudson, Frederick E. Whitten, Winger Reeder* and *Barker, Gumbiner & Hazard* for appellant.

BOYER, C.—This is an action to recover the penalty imposed by section 10136, Revised Statutes 1919, for failure to transmit and deliver a telegraphic message. The case was tried before the court without a jury and the judgment was for the plaintiff. Defendant duly appealed and this court in an opinion rendered at its October, 1929, term reversed the judgment (22 S. W. (2d) 81). In review on *certiorari,* the Supreme Court quashed the opinion of this court by its decision rendered March 31, 1931, and reported in 39 S. W.

(2d) 372. The case was again docketed for rehearing and resubmission at the October, 1931 term of this court, at which time the case was argued, and submitted upon new and additional briefs presented by both sides within the time allowed by the court.

The assignment of errors and points and authorities presented by appellant were rearranged, enlarged, and restated, and now include the new point that the petition does not state a cause of action. The main contention of appellant however, as stated by counsel in oral argument, and as shown by its original as well as by the new brief, is that the judgment is erroneous because plaintiff failed to show that the message was intrastate and clearly within the terms of the Missouri penal statute; that there was no evidence to support such a finding, but that under all the evidence the message was interstate and exempt from State regulation or penalty. A point originally made on the exclusion of evidence and which received attention in the first opinion is withdrawn. While the case appears in new habiliments, it is in substance the same as when first presented for determination at the trial and in this court. Under the pleadings and admissions, as stated by the Supreme Court in its opinion at page 373:

"The sole question for the trial court to determine was the character of the message. If the message was interstate commerce, plaintiff was not entitled to recover the penalty provided by the State law. . . . On the other hand, if the message was intrastate commerce, the State penal statute governs, and plaintiff would be entitled to recover the penalty provided by such statute because nondelivery of the message was admitted without offering any excuse therefor."

In view of the admissions in the answer, brief reference to the petition will suffice. It states that defendant was "engaged in the business of transmitting and delivering telegraphic messages, among other places, from the city of Kirksville to the city of Monroe, each of said cities being within the State of Missouri;" that a message was delivered to defendant's agent at its office in the city of Kirksville for transmission and delivery to one A. H. at Monroe City, and plaintiff paid the charge demanded therefor; that it became the duty of defendant to transmit said message and place same in the hands of the addressee; that the said addressee was at all times at Monroe City and by the exercise of ordinary care could have been found and the message delivered; that defendant did not transmit and deliver the message promptly and never did deliver same; that by virtue of the statutes of the State plaintiff is entitled to recover from the defendant for its wrongful act, failure and neglect in the sum of $300, for which sum and cost judgment was demanded.

The answer admits that defendant is a corporation engaged in the business of transmitting telegraphic messages among and between different points in the United States, and among others from the city of Kirksville to the city of Monroe in the State of Missouri; admits that plaintiff delivered to its agent at its office in the city of Kirksville, Missouri, for transmission and delivery a certain telegraphic message set forth in plaintiff's petition; admits that the message was not delivered to the addressee, and denies each and every other allegation in said petition. By way of an affirmative defense the answer sets forth "that said message was delivered to it at its office in Kirksville, Missouri, for transmission and delivery to the addressee therein named at Monroe City, Missouri; that at said time and for many months prior thereto and now the regular, prescribed, established, and observed routing for telegraphic messages between said points, Kirksville and Monroe City, Missouri, carried said messages out of Missouri into and through the State of Kansas before said message reached its destination, and for said reason said message became and was an interstate message when received at the defendant's office in Kirksville for transmission and delivery. That if said message had been transmitted and delivered to the address therein it would have passed over and along the following routing to-wit: From Kirksville, Missouri to St. Louis, Missouri, from St. Louis, Missouri to Kansas City, Missouri, from Kansas City, Missouri, it would have followed the line of the Missouri Pacific Railroad Company into and through various points in the State of Kansas, to St. Joseph, Missouri, over a Burlington wire to its destination, Monroe City, Missouri, and for said reason said message was an interstate message."

The answer further alleges that by the act of Congress approved June 18, 1910, and by supplemental acts, the congress of the United States assume charge of the regulation of interstate commerce by telegraph and conferred upon the Interstate Commerce Commission full power over all rates, penalties and practices of telegraph companies engaged in interstate commerce and by reason thereof the statute of Missouri providing a penalty for failure to transmit and deliver messages does not apply to interstate messages, but that such interstate communication is exempt from State regulation.

At the opening of the trial it was again admitted by counsel for defendant that the message was received, the charge paid, and that there was a failure to deliver the message; it was further admitted that the addressee was present at Monroe City. Counsel refused to admit a *prima facie* case or to admit that the message was intrastate. Upon the pleadings and the admissions plaintiff rested his case. Defendant proceeded to introduce evidence and offered one witness, the

only one called by either side, and he testified to the following state of facts: That he was employed by the defendant; that he was the testing and regulating chief of the Kansas City office; that he had instructions for routing all messages, and that it was his duty to see that the circuits were made up in accordance with those instructions; that he knew of his own knowledge the routing of messages from various places in the State of Missouri, provided he knew the point and the railroad on which the point is located; that he occupied a similar capacity in 1925, when the message was received; that the telegraph lines of the Western Union usually follow railroad lines; that the Western Union did not have any wires in the State of Missouri, outside the city leads, except those that follow railroad lines. The witness then described the location and use of wires leading to and from Kirksville and Monroe City, and the relay stations for each point, they being St. Louis and Kansas City. He testified that at the time in question the route of a message from Kirksville for delivery to Monroe City would have been along the Wabash to St. Louis, then to Kansas City, and thence relayed over defendant's wires along the Missouri Pacific Railroad from Kansas City, through Leavenworth and Atchison, Kansas, to St. Joseph, Missouri, and thence along the Burlington to Monroe City, its destination. It was also shown by the evidence of this witness that defendant used the telegraph office at Monroe City located in the Burlington depot for the reason that it was more convenient for the delivery of messages and that same could be delivered with greater speed; that there was a telegraph office at the Wabash depot in Monroe City which was not used because of its inconvenience and distance from the business part of the town, and for the reason that the amount of business in that town was too small to be divided between the two depots; that the practice of routing messages relayed through Kansas City to Monroe City and other points along the Burlington system near Monroe City, was established because of the fact that the company had a great many wires leading out of Kansas City to the north over the Missouri Pacific Railroad on the Kansas side of the Missouri river to St. Joseph, and greater speed and accuracy could be secured by using these wires; that this method of routing messages was in existence prior to and at the time the message in question was received; that the message in question and all messages from the small towns along the Wabash railroad were sent to St. Louis, and if they were to be delivered to towns near Kansas City, in Missouri, were relayed to Kansas City and then sent along wires to the point of destination from Kansas City; and that this was done for the reason that in the larger offices in Kansas City and St. Louis faster machinery and more expensive equipment were used to expedite traffic; and that in these

large relay points defendant could better supervise its circuits, maintain higher speed in transmission, and a greater degree of accuracy; that as many as a dozen messages at a time, if need be, could be handled between St. Louis and Kansas City and more rapidly than a message could be transmitted over a wire serving a number of small towns such as Monroe City; that such a particular wire is naturally slower because one town has to wait on another to get in on the wire and the handling is done by railroad employees who have other duties; there was no direct wire of defendant leading from Kirksville to Monroe City, but the Western Union had a wire running from St. Louis to Monroe City over the Wabash by way of Moberly.

On cross-examination the witness testified that he had no knowledge of the course of the message in question and did not know whether it ever left the office at Kirksville; that all messages from Kirksville are not sent outside of the State, but are sent to St. Louis; if the destination is a town which is relayed by Kansas City, then the message is forwarded to Kansas City to be sent from there, but it depends on the destination; a message from Kirksville to Moberly would go to St. Louis, then to Kansas City, and thence to Moberly, all within the State; that the company had a direct wire from St. Louis on the Wabash which reaches the Wabash office at Moberly and there is a wire on which a message could be handled, if arrangements were made to handle it that way, from Moberly to Monroe City. It was a part of the duty of witness to regulate or adjust the instruments used on the wires, maintain the circuits according to their assignments, and see that they were kept in operating order; the routes that messages would take from Kirksville to other points in Missouri, are determined in the head office in New York, usually on advice of the division traffic engineer and that of the witness, and are authorized and established at that office. Instructions were issued from time to time covering the period in question which directed the routing and made up the circuits; the witness read the instructions and kept the lines made up in accordance with the instructions; that the routing of messages was under his observation at all times; that he had re-examined the instructions in effect in 1925, when the message was received, and refreshed his memory therefrom; that said instructions were then at the hotel; that the date of assigning the circuit so that it went through Kansas was July, 1924. After looking over the papers witness remembered the entire situation that existed at the time and he remembered how messages were then handled; that there were two telegraph offices at Monroe City, and messages could be sent from St. Louis to either or both of those offices, but if the St. Louis office offered a message to the Wabash depot the agent would object to taking it and would

tell St. Louis to send it to the C. B. & Q.; that the agent at the Wabash depot at Monroe City accepted messages to be sent from there, but all business to Monroe City was sent to the C. B. & Q.; that the original message with the sending marks on it and the relay copy with the marks on it would constitute the record of the handling of the message; that he did not know whether the copy of the message would be in existence at that time. In reference to messages for Monroe City, the witness said that he knew just what the routing was; that he remembered how they were handled, and that he was responsible for the wires on which they were handled "all that time." There is no evidence as to what happened to the message which was tendered for transmission, but all the testimony is to the effect that if the message had been sent it would have traversed the established interstate route. There is no evidence to the contrary, although there is testimony to the effect that it was possible to transmit the message over intrastate lines, but that such arrangements were not made or maintained and that such messages were not so handled.

No declarations of law were asked or given and no finding of facts was requested or made. The only finding recited in the judgment is "that the allegations of plaintiff's petition are true, and that he is entitled to the relief prayed for." It was adjudged that plaintiff recover of defendant the sum of $300 with cost.

### OPINION.

The first point presented by appellant is that the petition does not state a cause of action under the Missouri penal statute. The other points are all related and may be summarized in the charge that the court erred in rendering judgment for plaintiff because plaintiff failed to show that the telegram in question was an intrastate message; that under all the evidence it was interstate, and under the pleadings and evidence the judgment should have been for defendant.

Respondent objects to a consideration of the points presented in the brief of appellant at the rehearing of the case because the first point made was not raised in appellant's original brief presented at the first hearing in 1929, and because the assignment of error on the other point now presented was insufficient as shown by the original "assignment of error" in the first brief. For these reasons it is insisted that there is nothing now before this court for review but the record proper. Such objection and insistence cannot be allowed. When a motion for rehearing is sustained the case stands just where it was when filed in the appellate court. There must be an actual resubmission and an actual rehearing before disposing of the case [Paving Co. v. Realty & Imp. Co., 270 Mo. l. c. 701.] When a case

has been set down for rehearing it occupies the same position as any other case which has never been heard and it is before the appellate court *de novo*. [Starr v. Penfield, 205 S. W. 541; Morris v. Kansas City Light & Power Co., 302 Mo. 475, 481, 258 S. W. 431; Rock Island Implement Co. v. Wally, 268 S. W. 904, 907.] If a case be transferred from an appellate to the Supreme Court the party appealing has the right to file a corrected abstract if served and filed in time, and on resubmission the case comes on for rehearing just as if it then appeared for the first time. [Benanti v. Security Ins. Co., 9 S. W. (2d) 673, 674.]

When the case at bar reached this court from the Supreme Court and was docketed for rehearing and resubmission it occupied the same status that any other case would have upon its first appearance. Appellant could make assignments and present points in the brief the same as though the case had never been heard, provided the brief be served and filed in time. Briefs were filed within the time allowed by the court and there is no complaint that appellant should be precluded for failure to make timely service. The points now made on appeal are in no way inconsistent with the position of appellant when the case was formerly here. The quoted assignment of error contained in the first brief was incidentally held to be insufficient by the Supreme Court in its disposition of the case. We observe that the assignment there quoted is incomplete when compared with the original brief of appellant, and we further observe that the original brief in itself plainly and explicitly called to the attention of the court the error of which it now complains; that is, on the issue of the character of the message and that there was no evidence that it was intrastate business. Occasion might arise where an appellant upon rehearing would not be permitted to take an unfair position to the disadvantage of the other party. There is nothing of that nature in the matter now before us  Authorities holding that an appellant may not raise new issues by way of a reply brief after joinder in error have no application. We will consider the case upon the briefs now presented, and as though it had not been heard previously.

The first point pertains to the sufficiency of the petition. It is insisted that the petition fails to allege that defendant at the time in question maintained and operated a telegraph line wholly within the State and between the cities of Kirksville and Monroe City, and that it fails to allege that the message in question was to be transmitted between the point of origin and the point of destination over telegraph lines of defendant situated wholly within this State. In view of the trial procedure and the time and manner of the attack upon the petition, we are not disposed to agree with appellant but rule

760

the point against it. There was no demurrer to the petition; there was no motion for judgment upon the pleadings, and there was no demurrer to the evidence. The case was submitted without a request for declarations of law or findings of fact, and the petition should be regarded as sufficient after judgment. It charges that the defendant at all times mentioned was "engaged in the business of transmitting and delivering telegraphic messages, among other places, from the city of Kirksville to the city of Monroe, each of said cities being within the State of Missouri." The implications and intendments favorable to the petition would supply the omissions which appellant says it was necessary to allege. Defendant answered as though the petition did allege an intrastate transaction, presented its defense and joined issue upon a trial of the question as to whether the message was interstate commerce. Furthermore, if the petition could be said to be defective for the reason alleged the judgment would not be reversed "for the want of any allegation or averment on account of which omission a demurrer could have been maintained;" nor "for omitting any allegation or averment without proving which the triers of the issue ought not to have given such a verdict." [Section 1099, R. S. 1929.] This is the initial objection to the petition and it comes too late.

The next error assigned is the one of greater moment and is to the effect that the judgment is without evidence to support it, and that under all the evidence and under the law applicable the message was interstate commerce. This point is properly lodged in the case for consideration and under the law and the evidence should be sustained for the following reasons. Our conclusion from the evidence detailed in the statement and from all the evidence in the record is that if the message had been sent it would have traversed the regularly established and maintained interstate route for such traffic. This fact impressed the telegram with the character of interstate commerce. There was no evidence to the contrary. There was a showing that it would have been possible to have sent the message over wires wholly within the State of Missouri if arrangements had been made for doing so. There is no proof that there was any such arrangements maintained or operated by the defendant for the transmission of messages between the two cities named, but all of the proof, and the only proof, upon the subject is that the route for such a message was interstate. Any conclusion that the message was intended to be sent or was sent over wires wholly within the State would rest solely upon conjecture. Under the pleadings and the admissions made in this case there remained but one question for proof and decision and that was the character of the message. Issue was joined in the trial upon this question alone. There was no express finding

made by the court upon the issue, but judgment was rendered for the plaintiff which may be said to imply a finding that the message was intrastate in character and subject to State regulation. The legal effect of all the evidence should have been the decisive factor and there being no evidence to support the judgment it should not be permitted to stand.

If the message was interstate commerce, plaintiff was not entitled to recover the penalty provided by the State law. The burden was on the plaintiff to make out his case and it devolved on him to show that the message was intrastate. [State ex rel. v. Trimble, 39 S. W. (2d) 372.] This he failed to do. Under the evidence the message was interstate commerce whether sent or not. The case of Missouri Pacific Railroad Co. v. Stroud, 267 U. S. 404, 45 S. Ct. 243, 69 L. Ed. 683, is in point and controlling as to the character of the business. The contract to transmit was entered into and the transit was started as soon as the message was received by the agent of defendant. [Western Union Telegraph Co. v. Czizek, 264 U. S. 281, 44 S. Ct. Rep. 328.] It became and was an interstate message because the uncontroverted facts show that if it had been delivered at its destination it would have passed out of Missouri into Kansas while in transit. [Western Union Tel. Co. v. Speight, 254 U. S. 17.] Federal decisions on questions of interstate commerce control. [Donovan v. Wells-Fargo & Co., 265 Mo. 291, 304; Chesapeake & Ohio Ry. Co. v. Martin, 283 U. S. 209, 51 S. Ct. 453, 458.] Pertinent to the questions of the character of the message, the penal nature of the statute, whether plaintiff made a *prima-facie* case, and whether the State statute applies, many other cases both State and Federal may be consulted with profit. Some of them are: Taylor v. Western Union Tel. Co., 181 Mo. App. 288, 298, 300; Brockman Commission Co. v. Western Union Tel. Co., 180 Mo. App. 626, 631; Taylor v. Western Union Tel. Co., 199 Mo. App. 624; Davis v. Western Union Tel. Co., 198 Mo. App. 692; Southern Express Co. v. Byers, 240 U. S. 612.] They support our conclusion that the judgment in the case at bar was unauthorized.

Respondent is solicitous that his points and authorities presented in the original and new briefs be not overlooked. The brief filed in 1929, presented three points. The first two pertain to the subject that plaintiff made a submissible case and inasmuch as defendant did not request findings of fact or declarations of law there is nothing for review except the record proper. The cases cited show that respondent failed to State the law in its entirety and that plaintiff must at least establish a *prima facie* case. The third point relates to the sufficiency of the original assignment of error to permit a review of the evidence in an effort to ascertain whether the judg-

ment is supported by the evidence. What we have said heretofore was written in view of the position of respondent upon these subjects and the authorities cited, and we noted that the original assignment of error while held to be insufficient in itself was not all that was presented in the original brief of appellant, but that said brief under points and authorities was ample to call to the attention of the appellate court the point of error that the judgment was without evidence to support it. In the brief of respondent filed at the present term, he reiterates the three points heretofore mentioned and supplements them by a fourth point to the effect that the motion for a new trial merely charged that the judgment was against the evidence and the weight of the evidence and that this question could be determined only by the trial judge. This point is not elaborated, and it is not urged in the brief that the motion for new trial was in fact insufficient to support an assignment of error such as we have considered. Respondent does not fully state the contents of the motion. It does set forth as a reason for a new trial that the judgment is against the evidence and the weight of the evidence; it also states that the judgment is against the law applicable to cases of this kind; that the judgment is contrary to law, and that under the pleadings and the evidence the judgment should have been for the defendant. We regard the motion as sufficient, under the circumstances in this case, to call to the attention of the trial court that defendant was complaining because there was no evidence to support the judgment; that it was contrary to law and should therefore have been for defendant; and that it is sufficient upon which to base the primary assignment of error which we have considered, and to call upon this court to examine the record of the evidence and determine whether under the law and the evidence the judgment should be sustained.

In this case the evidence of plaintiff and that of defendant was not in conflict. Plaintiff had no proof that the message was intrastate and at the conclusion of his evidence his case rested merely upon a presumption that such was the fact. [Taylor v. Western Union, 181 Mo. App. 288, 298.] Defendant established the facts in reference to the character of the message which necessarily disposed of the presumption and left the record of proof barren of any evidence whatever, presumptive or otherwise, that the message was domestic in character, that is, intrastate. The evidence of defendant did not raise an issue of fact between the truth of it and the truth of the evidence presented by the plaintiff, but showed affirmatively that plaintiff never had a case and thereby established facts in avoidance of plaintiff's alleged case. No other or further evidence was offered that would create a contested issue of fact for the determination of the trier of the facts. *The case was left for determination solely upon*

*the legal effect of the facts shown by the record.* In such situation a motion for a new trial, which alleges that the judgment is against the evidence, contrary to law, and under the pleadings and evidence should have been for defendant, is sufficient to call the attention of the trial court to the error upon which appellant relies, and that is enough to fill the office of such a motion. A comparable situation has been met and dealt with heretofore. In the case of Municipal Securities Corp. v. Kansas City, 265 Mo. 252, the assignment in the motion for new trial in a law case was "that the finding is against both the law and the evidence and against the law under the pleadings." It was held to be sufficient to warrant the appellant court in determining whether there was any law or evidence to sustain the judgment. At page 265 of the opinion it is said:

"While this is a jury-waived law case, we think we are warranted in looking to see whether there is any law or evidence which can sustain this judgment. We may not weigh the evidence; for the trial court alone had that privilege and duty. We may only look and see if there be any substantial evidence whatever in the case, which, when applied to the case made by the pleadings will, as a matter of law, permit this judgment to stand. . . . The facts are neither contradicted nor disputed. The dispute is only upon the legal effect of the facts."

To the same effect is the case of Commonwealth Trust Co. v. Reagan et al., 193 Mo. App. 290, 300.

Careful consideration has been accorded all points presented by both sides and our conclusions have been stated. It results therefrom that there was a total failure of proof upon an essential element of plaintiff's case, and that under the law applicable to the pleaded issues and the facts he was not entitled to recover. The judgment should be reversed. The Commissioner so recommends. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of Boyer, C., is adopted as the opinion of the court. The judgment is reversed. All concur.